Argued and submitted January 6, reversed and remanded September 16, 1981

In the Matter of the Compensation
of James Ohlig, Claimant.

OHLIG,
*Petitioner-Cross-Respondent,*

*v.*

FMC MARINE & RAIL EQUIPMENT
DIVISION,
*Respondent-Cross-Petitioner.*

(CA 15985, SC 27224)

633 P2d 1279

Burton J. Fallgren, Portland, argued the cause and filed briefs for petitioner/cross-respondent.

Katherine H. O'Neil, Portland, argued the cause for respondent/cross-petitioner. With her on the briefs were Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Denecke, Chief Justice, and Lent, Linde, Peterson, Tanzer and Campbell, Justices.

LENT, J.

Peterson, J., filed a dissenting opinion.

**LENT, J.**

The issue in this worker's compensation case is whether the Court of Appeals should have allowed a reasonable attorney fee to the claimant's attorney to be paid by the direct responsibility employer under ORS 656.386(1) or if the claimant's attorney fees must be paid from his award of compensation under ORS 656.386(2).

"656.386(1) In all cases involving accidental injuries where a claimant prevails in an appeal to the Court of Appeals from a board order denying his claim for compensation, the court shall allow a reasonable attorney fee to the claimant's attorney. In such rejected cases where the claimant prevails finally in a hearing before the referee or in a review by the board itself, then the referee or board shall allow a reasonable attorney fee; however, in the event a dispute arises as to the amount allowed by the referee or board, that amount may be settled as provided for in subsection (2) of ORS 656.388. Attorney fees provided for in this section shall be paid from the Industrial Accident Fund as an administrative expense when the claimant was employed by a contributing employer, and be paid by the direct responsibility employer when the claimant was employed by such an employer.

"(2) In all other cases attorney fees shall continue to be paid from the claimant's award of compensation except as otherwise provided in ORS 656.382."

*Background*

The case arises out of claimant's compensable industrial accident of January 10, 1975. In the accident claimant sprained his right ankle. He also suffered injury to an intervertebral disc, but this injury was not diagnosed until much later. The direct responsibility employer accepted the claim for worker's compensation, and the claim was closed by a Determination Order of July 8, 1975, which awarded permanent partial disability for five percent loss of claimant's right foot.

Claimant suffered recurrent problems with his right leg. Periodically it would give out, causing him to fall. All doctors concerned continued to diagnose and treat the problem as stemming from the ankle injury. Claimant eventually underwent surgery on his ankle and was fitted with a brace. Employer accepted liability for this medical

treatment, and a second Determination Order was entered on February 28, 1977. This Determination Order did not increase claimant's permanent disability compensation. At that time both the employer and the claimant, upon available medical opinion, believed that this claim concerned nothing but injury to the right ankle. Claimant's falling persisted.

On March 15, 1977, claimant requested a hearing, stating the issue in the following terms:

"1.  Had Claimant received all of the TTD to which he is is [sic] entitled?

"2.  Is Claimant's condition stationary?

"3.  The amount of permanant [sic] disability to which claimant is entitled."

Finally, in May, 1977, after the request for hearing was filed, Dr. John Blosser, a consulting physician for the employer's insurance carrier, began to suspect that the true cause of claimant's leg difficulties was a back condition. In June, 1977, Dr. Blosser sent a letter to the carrier, in which he detailed claimant's back condition, and opined that claimant could have injured an intervertebral disc in his original fall. On August 26, he sent another letter to the carrier, stating that claimant definitely had a back problem and that he was unable to work because his leg kept giving out. On October 3, the carrier received the physician's full reports on the claimant's case to that point. These included an entry of September 30, 1977, in which the doctor stated that a laminectomy was necessary.

On September 26, 1977, Dr. Blosser addressed a letter to claimant's attorney in which he stated:

"From the description of his original accident, I can only conclude or be of the opinion that most likely this disc trouble arose as a result of that accident."

Claimant's attorney forwarded this letter, along with a cover letter, to the employer's attorney on October 4. To the cover letter, claimant's counsel penned the notation,

"Based on this report you should reopen and pay TTD for full time less time worked and you should authorize surgery."

On October 21, 1977, claimant's hearing was convened. At this hearing the employer orally denied liability for the claimant's back condition, contending that it was not caused by the injury of January 10, 1975. The referee noted this denial in the record. The employer reasserted its acceptance of the claim with respect to claimant's ankle, but contended that the initial accident did not cause the back condition.

On November 30, 1977, while the hearing was in recess, claimant underwent surgery for removal of a herniated L4-L5 disc. The surgery relieved claimant's condition, and he has since returned to work.

A supplemental hearing was held on August 25, 1978. At this hearing, the employer reasserted its oral denial of liability for claimant's back condition. In his written Opinion and Order dated October 20, 1978, the referee recited in part as follows:

"* * * Claimant filed a request for hearing on March 15, 1977. He stated three issues as follows:

"1) Has claimant received all of the temporary total disability to which he is entitled?

"2) Is claimant's condition stationary?

"3) The amount of permanent disability to which claimant is entitled.

"At the initial hearing claimant was allowed to amend his request for hearing to include determination of the validity of the *employer's oral denial on record of coverage for claimant's back condition.* The issues of penalties and attorney's fees for unreasonable resistance were also included." (Emphasis added.)

The referee found the evidence insufficient to persuade him "that claimant's back injury resulted from his industrial injury." The referee accordingly ordered

"that defendant's partial denial with respect to claimant's back condition be and is hereby affirmed."

Claimant requested review by the Workers' Compensation Board, which found that claimant had

established the causal link between the accident and his back condition, reversed the referee, ordered the employer to pay compensation, and assessed penalties and attorney fees. On reconsideration requested by the employer, the Board reversed its earlier decision and reinstated the Order and Opinion of the referee.

Claimant requested judicial review by the Court of Appeals. That court viewed the posture of the case as follows:

"Claimant appeals from an order of the Workers' Compensation Board which upheld a denial of his claim for a herniated spinal disc.

"There is no dispute that claimant suffered a damaged disc; the issue is whether the damage is traceable to a fall at work. The carrier accepted his claim filed for an ankle injury received in the fall, but contended at the hearing that there was no causal relationship between the compensable injury to his ankle and his back condition. * * * "

*Ohlig v. FMC Marine & Rail Equipment,* 47 Or App 363, 365, 614 P2d 146, 147 (1980). Reviewing de novo, the court held that claimant had shown by a preponderance of the evidence that his herniated disc was caused by his work accident and concluded its opinion as follows:

"The Board's order on review upon reconsideration is reversed and claimant's claim is remanded to the employer and its carrier to be accepted and for payment of compensation, as provided by law, commencing on January 10, 1975 and until the claim is closed pursuant to the provisions of ORS 656.268."

47 Or App at 368, 614 P2d at 148. The court refused claimant's request for penalties and for attorney fees to be paid by the employer under ORS 656.386(1).

This court allowed claimant's petition for review on the question of the employer's responsibility to pay attorney fees. ORS 2.520; 290 Or 171 (1980).

The court below reasoned that the various medical reports and other writings which claimant sent to the employer after he requested review did not contitute a "separate" claim. From this the court apparently reasoned

that because the employer had accepted the claim originally, the matter under review remained an accepted claim and, accordingly, the claimant was not statutorily entitled to attorney fees under ORS 656.386(1). 47 Or App at 367. In adopting this line of reasoning, the Court of Appeals relied on three of its own cases, *Vandehey v. Pumilite Glass & Building Co.*, 35 Or App 187, 580 P2d 1068 (1978); *Smith v. Amalgamated Sugar Co.*, 25 Or App 243, 548 P2d 1329 (1976); and *Grudle v. S.A.I.F.*, 4 Or App 326, 479 P2d 250 (1971).

The court noted our decision in *Cavins v. SAIF,* 272 Or 162, 536 P2d 426 (1975), but, without discussion, apparently found it not in point.

The Court of Appeals cases are distinguishable from *Cavins* and from the instant case. In *Grudle, Smith,* and *Vandehey,* the question was the amount of compensation due for an injury which both parties agreed was compensable. In *Cavins* and in the present case, the employer disputes the worker's contention that his condition was caused by the accident.

In *Grudle v. S.A.I.F., supra,* plaintiff suffered the amputation of two fingers of his left hand. There was no question of causation, of the amputation, or of any other injury. The only question was the amount of compensation to which the worker was entitled for the injury. The court found this critical in denying attorney fees:

"Claimant was not denied his claim for compensation. His case was not a rejected one. He appealed from the award made by the Workmen's Compensation Board, asserting that the amount of the award should have been greater in accordance with what he considered to be the applicable section of the statute. ORS 656.386(1) does not apply to these circumstances. * * * "

4 Or App at 333, 479 P2d at 253.

In *Smith v. Amalgamated Sugar Co., supra,* the parties agreed on the cause of the injury. They disputed the extent of disability and resulting amount of compensation due for that injury. Plaintiff injured his wrist. After the determination order was issued and he suffered recurring problems, he consulted a physician who ordered remedial surgery. The employer accepted the fact that the injury led to the surgery, but contested the amount of temporary total

disability due to the worker. The court found the amount of compensation was the controlling question, saying that the case was analogous to *Grudle* and quoting the text we have above quoted from *Grudle*. 25 Or App at 249.

Finally, in *Vandehey v. Pumilite Glass & Building Co., supra,* on which the court below and the dissent rely, the issue was again the amount due. Causation was conceded. The employer asserted that the worker's condition was not serious enough to warrant the treatment he sought. The Court of Appeals regarded the question as one of the amount due, as indicated at 35 Or App at 191-92, where the court quoted extensively from *Smith,* including the quote therein from *Grudle*.

The dissent contends that the instant case is on all fours with *Vandehey:*

"There, while awaiting a hearing as to the extent of the claimant's disability (exactly the same situation as in the case at bar), the claimant's attorney sent a further medical report to the employer, requesting the reopening of the claim and payment of temporary total disability."

This overlooks the fundamental difference in the issues. The issue in *Vandehey* was the extent of disability and the amount of compensation due. In the instant case, the issue was whether the compensable accident *caused* the claimant's back condition.

In *Cavins v. SAIF, supra,* the issue was causation. The worker injured the lateral aspect of his ankle, and the employer accepted responsiblity for that injury. Later, he experienced pain in the area of an older injury to the medial aspect of the ankle. The claimant contended this was caused by the injury to the lateral aspect; the employer disputed that claim of causation. *Cavins* held that where the employer denies responsiblity for a condition or injury on the basis of causality, it forces the worker to appeal. If it is determined that the employer was wrong in this denial, that is, that the accident did cause the condition, the employer must pay attorney fees the claimant incurs in proving the causal link.

Contrary to the dissenting opinion, it is the factual issue of causality, not the procedural setting in which the

issue is raised, which was controlling in *Cavins* and which should be controlling in the case at bar.

Trying to distinguish *Cavins,* the dissent announces that it was "a claim for aggravation under ORS 656.273." That is questionable. ORS 656.273, the code section concerned with "aggravation" claims, is mentioned nowhere in the Court of Appeals' opinion, 20 Or App 361, 531 P2d 746 (1975), in our opinion, 272 Or 162, 536 P2d 426 (1975), or in any brief filed in that case.

The dissent also says that in *Cavins* SAIF denied the claim, though not formally. Actually, SAIF did exactly as the employer did in this case: SAIF refused to take a formal position, thus allowing it to contend that it had not denied the claim while it refused to pay compensation for medical treatment.

The dissent correctly states: "The only issue in *Cavins* was whether the worker's claim was compensable at all." In this case, that is also the issue. The employer insists that the back claim is not compensable because it was not caused by the industrial accident.

We have re-examined *Cavins* and find it controlling. SAIF accepted responsibility for the injury to the lateral aspect of the ankle, but refused to pay compensation for necessary surgery to the ankle and attendant compensation for temporary disability, insisting that *the compensable accident did not cause the condition* requiring the surgery. Plaintiff initiated review by a request for hearing, and established the compensability of his claim in the circuit court. That court, however, denied attorney fees. The Court of Appeals affirmed, and, on review, this court reversed the decision as to attorney fees. 272 Or at 163.

The issue in *Cavins* was causation; the insurer acknowledged that the worker had sustained a compensable injury and paid compensation as required for one condition, but denied responsibility *for a second condition* which the insurer contended was *not caused* by the accidental injury. The claimant's physician had prepared a report attributing the need for treatment of the medial aspect of the ankle to the injury to the lateral aspect, and this report was presented to the insurer. We noted the definition of a

claim and that there was no reason to hold that the report from the physician was not a request for compensation on the claimant's behalf. We rejected the argument that attorney fees could be awarded only if the employee filed and the employer rejected an "original claim." 272 Or at 164-165.

Here also, the notion that claimant did not initiate some original proceeding is unpersuasive. This claimant made a claim by his request for compensation for his back condition. Under ORS 656.005(7) claimant's attorney's letter of October 4, 1977, was a claim.[1] This letter had the notation, "Based on this report you should reopen and pay TTD for full time less time worked and you should authorize surgery." Attached was the doctor's report of September 26, 1977. This was a written request for compensation on behalf of the worker. The parties and the reviewing authorities have continually treated this as a claim. As in *Cavins,* the insurer here has paid compensation for one condition but has contended that the back condition was not caused by the fall and has denied the worker's claim for compensation for the back condition.

The employer's self-contradictory position would elevate form over substance and involve the worker's compensation system in semantic gymnastics.[2] The employer's

---

[1] ORS 656.005(7) reads as follows:

"(7) 'Claim' means a written request for compensation from a subject worker or someone on the worker's behalf, or any compensable injury of which a subject employer has notice or knowledge."

[2] The nature of the employer's position is amply illustrated by two quotes from the employer's explanation of its position to the referee at the supplemental hearing of August 25, 1978:

"* * * this is an accepted case. We accepted responsibility for the January 10, 1975 injury and all disability, medical care and treatment and time loss resulting therefrom. Once a hearing was requested on the second determination order, it was our position and we denied that any further time loss was warranted. We denied that any further scheduled permanent disability was warranted and we also denied there was any unscheduled disability in the area of the back. That denial and also three of those denials are merely asserting our position on the hearing that was coming up on the determination order. We have never denied a claim of any sort in this case.

"* * * * *

"* * * so I would ask you not to focus on the use of the word denial as trying to key into a denial of a claim which is a typical denial under the Act, but

characterizations do not change the fact that the employer denied responsibility for treatment of claimant's back condition.

Before the hearing of October 21, 1977, the employer refused to take a formal position and refused to authorize surgery for claimant's back condition. At the hearing of October 21, 1977, the referee found an oral denial, by which "the employer's representative has denied any coverage of the back related problem arising out of the injury of 1/10/75." Claimant was allowed to amend his request for hearing to challenge the validity of that denial.

Quite simply, what we have here is a "partial denial." We have not been referred to any statutory text concerning partial denials, but they are recognized and litigated in practice[3] and by administrative rule of the Workers' Compensation Board. OAR 436-83-125, effective September 1, 1975, provides:

> "Every notice of *partial denial* shall set forth with particularity the injury *or condition* for which responsibility is denied and the factual and legal reasons therefor. The notice shall be in the form provided for in [OAR 436-]83-120. Hearing and appeal rights and procedures shall be as provided for *claim denials* in ORS 656.262(6) and (7), 656.319 and these Rules." (Emphasis added.)

---

instead denial as taking our position denying any further award from the determination order. That is the problem I think with the word denial.

"[Administrative Law Judge]: It is a fancy bit of footwork, I might say."

[3] As noted in the text, the practice is known to the Bar. In "Workers' Compensation (Oregon CLE 1980)," we find § 24.24:

> "A question arises under what might be called a 'partially rejected claim.' A simple demonstration follows: The worker sustains an injury to the lower back. He or she reports the injury and starts receiving compensation. After a period of time, the doctor commences treatment for a neck problem. The worker believes the neck problem is related to the back accident, but the carrier takes a different position. By administrative rule and custom, it is obligated to issue a denial of responsibility for the condition using the same form and giving the same notice of hearing rights as in a denial of claim in the first instance. OAR 436-83-125. Several of these cases have gone to the appellate courts on the merits. Dicta, at least, indicates approval. The supreme court's opinion in *Cavins v. SAIF*, 272 Or 162, 536 P2d 426 (1975) would seem to expand the meaning of 'claim' sufficiently to validate partial denials. It is assumed that attorney fees are payable in the partial denial situation just as they are in the first instance."

We do not decide in this case whether the "simple demonstration" which is given has validity. We only set forth § 24.24 to show that the Workers' Compensation Bar must be aware of the practice.

The statutes to which reference is made in the rule concern the denial of claims and the procedure for a claimant to contest a denial. The reference to OAR 436-83-120 refers to the Board rule which fleshes out statutory duties of employers who would deny claims.

The employer here failed to follow the administrative rule despite the fact the worker's lawyer filed a claim for the back condition and the employer refused to accept responsibility for that condition. The claimant, the referee and the Board have treated this as litigation of a denied claim. The Court of Appeals, as must be obvious from the language we have quoted above from that court's opinion, did the same, except for that court's refusal to award an attorney fee to be paid by the employer. Certainly the employer should be in no better position for failure to give the written notice of denial required by the rule than would have been the case had there been compliance.[4]

At the supplemental hearing of August 25, 1978, the employer reaffirmed its "partial denial," again disclaiming all responsibility for claimant's back condition. The principal issue litigated in both the initial and the supplemental hearings was the employer's responsibility for compensation for the back condition. The Order and Opinion of the referee concluded: "IT IS NOW THEREFORE ORDERED that defendant's partial denial with respect to claimant's back condition be and is hereby affirmed."

In the face of this stream of denials at all levels, the employer asks this court to indulge the idea that because the employer accepted responsibility for claimant's original ankle injury, there has never been a denial upon which to predicate an award of attorney fees. The court refuses to accept this argument.

We hold here, as we did in *Cavins,* that ORS 656.386(1) requires that the petitioner's attorney fees be paid by the employer. Therefore, we reverse that portion of

---

[4] The dissent argues that this court has no authority to sanction the practice embraced in OAR 436-83-125. The employer has not attacked the validity of the rule; rather the employer simply ignores the existence of the rule. The dissent's attack on the validity of the rule is purely *sua sponte* and without the benefit of adversarial briefing.

the decision of the Court of Appeals denying attorney fees and remand the case for allowance of a reasonable fee to claimant's attorney.[5]

Reversed and remanded.

**PETERSON, J.,** dissenting.

At the time of the claimant's injury, and during the hearings in this case, the procedure for obtaining compensation included the requirement that SAIF or the direct responsibility employer, within 60 days after having notice of a claim, give "written notice of acceptance or denial of the claim." ORS 656.262(5). If the claim were denied, the fund or direct responsibility employer was required to give "written notice of such denial, stating the reason for the denial, and informing the worker of hearing rights." ORS 656.262(6).

On October 4, 1977, the claimant's claim was pending and the parties were awaiting the referee's hearing scheduled for October 21, 1977. On October 4, 1977, his attorney sent a doctor's report to the employer along with this request:

"Based on this report you should reopen and pay TTD for full time less time worked and you should authorize surgery."

This request was made prior to a hearing which the claimant had previously requested and which involved these issues:

1.  Whether he had received all of the temporary total disability payments to which he was entitled;

2.  Whether his condition was stationary;

---

[5] We have treated the case before us as if there were a necessity that the employer has rejected a claim in order for there to be a statutory basis for the Court of Appeals to order the employer to pay an attorney fee to the claimant. The text of the statute can be read otherwise; indeed, when one's attention is upon the first sentence of ORS 656.386(1), the subsection relating to an allowance of attorney fees by the Court of Appeals, the right of a claimant to such an award is established by his prevailing in that court in an "appeal" from a Board order denying his claim. The sentence is silent as to any necessity for showing a rejection by the employer. The second sentence of ORS 656.386(1), which is concerned with the duty of the referee or the Board to award an attorney fee, makes reference to "such rejected cases" without a prior reference to "rejected cases." This language presents an ambiguity that we have not found necessary to resolve in this case.

3. The amount of permanent disability to which he was entitled.[1]

The claimant's request of October 4, 1977, did not create a "new claim." The request related to the issues then pending before the referee, and in addition raised the additional issue whether further medical treatment was required.

The majority opinion correctly points out that at the hearing on October 21, 1977, the employer's attorney "orally denied liability for the claimant's back condition." Although that statement by the employer's attorney put in issue the compensability of that portion of the claimant's claim relative to the back injury, it did not have the effect of creating a denied claim under ORS 656.262(5) or ORS 656.386(1). The posture of the case was this: The claimant's claim was then pending before the referee. The employer had denied a causal connection between the accident and the claim for compensation arising from the back problems. The claim was in exactly the same posture as if the back claim had been asserted originally and with the ankle claim.

This case involves a construction of the first sentence of ORS 656.386(1) which reads:
"In all cases involving accidental injuries where a claimant prevails in an appeal to the Court of Appeals from a board order *denying* his *claim* for compensation, the court shall allow a reasonable attorney fee to the claimant's attorney. * * *" (Emphasis added.)

Obviously, the key words in that sentence are the words "denying" and "claim." A failure to award all of the requested relief is not equivalent to "a board order denying his claim." Such a construction would compel the carrier to pay attorney fees in every appeal to the Court of Appeals in which the Court of Appeals increased an award of compensation. However desirable that may be, the statute does not require it.

ORS 656.005(7) defines a "claim" as "a written request for compensation." At one and the same time an injury can (and often does) give rise to compensation

---

[1] These issues were listed in the claimant's request for hearing. See majority opinion at 589.

"claims" for (1) medical expenses, (ORS 656.245), (2) temporary total disability (ORS 656.210), (3) permanent total disability (ORS 656.206), and (4) permanent partial disability (ORS 656.214), either scheduled (ORS 656.214(2)) or unscheduled (ORS 656.214(5)). "Claims" for permanent partial disability can involve scheduled claims for injury to more than one part of the anatomy. The word "claims," as used in the foregoing sentences, illustrates the fact that although but one claim is made in the sense that but one request for compensation is made under ORS chapter 656, the relief requested may involve claims of many different kinds.

The term "compensation" is defined in ORS 656.005(9) to include "all benefits, including medical services, provided for a compensable injury to a subject worker." In short, a compensable injury (which term is defined in ORS 656.005(8)(a)) gives rise to one claim—which in many cases is a multi-faceted claim—but which is nonetheless one claim. The majority opinion errs in treating the worker's claim as, in effect, two claims.

Nor does this case involve a "denied claim" under ORS 656.262(5) or (6) or ORS 656.386(1). The referee's order and the Board order did not deny compensation. The referee ordered an increase in compensation for 15 percent loss of the right foot. This order was affirmed by the Board.

*Cavins v. State Accident Insurance Fund*, 272 Or 162, 536 P2d 426 (1975), appears to be inconsistent with this analysis, but in fact, it is not. The briefs in *Cavins* reveal that the claimant's Workers' Compensation claim arising from the injury of March, 1970, was closed, apparently in 1971. The claimant sustained a second injury on September 21, 1972, and the Workers' Compensation claim made thereon was closed on November 24, 1972. *No appeal was taken from that closing order.* However, after symptoms continued in 1973, the claimant's treating physician wrote SAIF regarding the treatment that the claimant was then receiving. SAIF consistently refused to pay any compensation requested in various letters sent to it in 1973. However, SAIF did not issue a formal notice of denial of responsibility under ORS 656.262(5).

The letter of the treating physician in *Cavins,* requesting that SAIF reopen the claim for treatment, was in the nature of a claim for aggravation under ORS 656.273, which claim was consistently denied by SAIF from the very day that it was filed. The only issue in *Cavins* was whether the worker's claim was compensable at all. SAIF's position concerning ORS 654.386(1) was that since it had not denied the "original claim" arising from the 1972 injury, it should not be treated as having denied the aggravation claim under ORS 656.386(1). The court was correct in holding, in effect, that the consistent refusal of SAIF to pay all or any part of the claims asserted was a denial under ORS 656.386(1).

The facts of this case are more akin to *Vandehey v. Pumilite Glass & Building Co.,* 35 Or App 187, 580 P2d 1068 (1978). There, while awaiting a hearing as to the extent of the claimant's disability (exactly the same situation as in the case at bar), the claimant's attorney sent a further medical report to the employer, requesting the reopening of the claim and payment of temporary total disability. The referee reopened the claim and ordered payment of temporary total disability payments, but ordered the claimant to pay his attorney fees out of his compensation rather than ordering the employer to pay the fees. The Workers' Compensation Board affirmed, as did the Court of Appeals. This statement of Judge Gillette correctly analyzes the situation:

"* * * Claimant's September 29, 1976, request for a hearing specifically placed in issue the need for further medical evaluation of claimant on a claim he had already made. Dr. Hickman's letter of January 4, 1977, supported that prior claim and was appropriate evidence to be received at the subsequent hearing. It was proffered evidence of a *pending* claim, not assertion of a *new* one. Any other rule would encourage similarly situated claimants to 'keep an anchor to windward' by labeling all new medical evidence as either a new claim or an aggravation claim, instead of concentrating on the hearing process they have alredy invoked. This approach would seriously undermine the hearing process. We decline to adopt it." (Emphasis theirs.) 35 Or App at 192-193.

Judge Gillette distinguished *Cavins, supra,* as follows:

"Claimant relies on *Cavins v. SAIF, supra.* In that case, however, the carrier had refused to pay for an ankle operation and consequent temporary disability on the theory that the surgery was not necessitated by a covered injury. In holding that claimant was entitled to attorney's fees, the Supreme Court said,

" '* * * the legislature clearly intended that a workman whose claim is erroneously rejected *and who is thereby forced to appeal* should not be forced to bear the additional expense of employing an attorney to represent him. (Footnote omitted.)' " (Emphasis theirs.) 35 Or App at 193.

The effect of the majority opinion is to make an employer who denies any part of a worker's compensation claim liable for attorney fees in the Court of Appeals if any increase is made. ORS 656.386(1) does not require or suggest such a result.

It is true that the quoted rule, OAR 436-83-125, provides for a "partial denial." However, a rule which provides for partial denials cannot enlarge the limited provision for attorney fees in a statute which is clear on its face. The majority concedes that there is no statutory authority for partial denials and counsel have pointed out none. Partial denials are apparently a device which has developed as a matter of convenient practice, but neither rule nor practice can substitute for an authorizing statute. The legislature has provided for acceptance or denial. If a contrary practice is to be adopted, it should be by the legislature. We have no authority to sanction the practice and certainly no authority to award attorney fees based upon it.

I would affirm. I believe that this is one of the "all other cases" referred to in ORS 686.386(2).[2]

Tanzer, J., joins in this dissent.

[2] ORS 656.386(2):

"In all other cases attorney fees shall continue to be paid from the claimant's award of compensation except as otherwise provided in ORS 656.382."