In the Matter of the Compensation of
Lorene Partridge, Claimant.

PARTRIDGE,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(WCB No. 78-07510, CA A20647)

643 P2d 1358

D. Richard Hammersley, Portland, argued the cause for petitioner. With him on the brief was Brad L. Johnson, Portland.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Claimant appeals an order of the Workers' Compensation Board (Board) which reversed a referee's order granting her compensation for permanent total disability. The issues on appeal are (1) whether claimant's pre-existing psychiatric condition was worsened by her industrial injury, (2) whether claimant's osteoarthritic condition is related to her industrial injury, and (3) whether claimant has been adequately compensated for her knee injury by the determination order. We review *de novo*. ORS 656.298(6).

Claimant was 58 years old in January, 1976, when she sustained a work-related knee injury. Dr. Bernardez diagnosed a left knee strain. State Accident Insurance Fund (SAIF) accepted responsibility for that injury. Although both parties agree that claimant had pre-existing psychological problems, she had no history of professional treatment for those problems prior to her knee injury. Dr. Means, a psychologist, examined claimant in November, 1976. She reported that:

> "[Claimant] gives a history of withdrawal and the inability to establish close interpersonal relationships. She feels alienated, isolated, misunderstood, and not part of the general social environment. * * * She seems to create her own private fantasy world and she maintains this by being socially introverted. * * * In spite of the fact that [claimant] has always been outside the general social environment, she has managed to work and support herself for a number of years and I feel that she will be able to do this in the future. As long as she is able to stay aloof or emotionally unresponsive, she will be able to handle her life situation. * * *"

Claimant underwent two knee surgeries. In March, 1976, Dr. Robertson discovered a torn meniscus and extensive degenerative arthritis during surgery. He reported to SAIF that claimant could not return to work for an undetermined period of time. In September, 1976, Dr. Robertson reported to SAIF that claimant's knee condition was still not stationary and that he thought "we should wait another 3 to 6 months." The second surgery, in November, 1977, was for a total knee replacement. After

claimant entered the hospital for the second surgery, a psychiatrist recommended a transfer to Woodland Park Mental Health Center because of her depression and suicidal ideation. Since then she has been in and out of Woodland Park several times. Dr. Larsen became her treating psychiatrist at Woodland Park, and he examined her thereafter on a regular basis. He reported to SAIF that she suffers from severe depressive neurosis, with possible simple schizophrenia, with poor prognosis. He did not believe that she had experienced any significant depression prior to her knee injury.

Dr. Parvaresh, a psychiatrist, examined claimant in March, 1978. He noted that (1) she had family problems during her entire life, (2) she had never trusted people, (3) she had ongoing difficulties with her husband and children, and (4) she had her daughter jailed on a drug charge. He found that she presented signs and symptoms of psychosis and, under sufficient distress, psychotic symptomatology. He recommended that she continue psychiatric treatment with Dr. Larsen but concluded that the prognosis was guarded. He did not find a causal relationship between her psychological problems and her knee injury, and he concluded that the knee injury contributed neither directly nor materially to her psychiatric disorder. He thought that, if she continued under psychiatric care, she could return to her previous employment from a psychiatric viewpoint, but that the knee condition would govern her physical labor.

Dr. Waldram released claimant for work with a satisfactory total knee replacement in June, 1978; however, her prosthesis limited her ability to work. A determination order was issued in September, 1978. It allowed claimant temporary total disability from the date of the accident through August 1, 1978, less time worked, and 65 percent loss of the injured knee.

Claimant was readmitted to Woodland Park on January 31, 1979. She was discharged on February 16, 1979. The impression at that time was severe depressive neurosis with borderline psychosis and depression secondary to her industrial accident. Dr. Larson then told SAIF that he disagreed with Dr. Parvaresh's assessment. He noted that claimant had been employed throughout her life and that she had been self-sufficient until her knee injury. His view

was that her "underlying schizophrenic illness" was exacerbated by her knee injury and that her depression and suicidal ideation had a direct causal relationship to her injury, surgeries, pain and physical disability.

Claimant was examined in May, 1979, by Dr. Stolzberg, a psychiatrist and neurologist, who concluded that claimant's emotional problems were not related to her knee injury. She diagnosed claimant as suffering from a masochistic personality disorder and felt that her problems which followed the knee injury were simply the reaction of a disordered personality to a stressful injury. Dr. Stolzberg felt that claimant's psychological problems, viewed in this way, had not in fact worsened at all:

> "The [masochistic] personality played a role in her dealing with the injury. And she dealt with the injury very much in the same way she dealt with other stresses in her life. * * * Her injury took away something that she needed to function and cope with the world * * *."

The doctor speculated that claimant's Woodland Park hospitalizations were related to the illness of her brother and the pregnancy of her unmarried daughter and not to her knee injury. Dr. Larsen disagreed. He felt that Dr. Stolzberg had either ignored or had been totally unaware of claimant's recent repetitive depression, psychiatric hospitalizations and the results of psychological testing. He again opined that claimant's emotional problems were the result of her knee injury.

We conclude that Dr. Larsen, the treating psychiatrist, proceeded upon an erroneous premise that claimant had no significant emotional problems before her knee injury. The weight of the evidence indicates otherwise. This conclusion is supported by the opinions of Drs. Parvaresh, Stolzberg and Means. Even Dr. Larsen referred to claimant's "underlying schizophrenic illness" in one of his reports to SAIF. The burden of proof was on claimant to prove by a preponderance of the evidence that her preexisting psychiatric condition was worsened by her industrial injury. *Hutcheson v. Weyerhaeuser,* 288 Or 51, 602 P2d 268 (1979); *Briggs v. SAIF,* 36 Or App 709, 585 P2d 719 (1978). That she is now receiving treatment for her psychological condition, where before she was not, is only circumstantial evidence of a worsened condition. We take as more

persuasive the testimony of SAIF"s expert witnesses that there is no causal connection between claimant's knee injury and her psychological problems. We agree with the Board that she has failed to sustain that burden of proof.

We also agree with the Board that (1) claimant's osteoarthritic condition is not related to her industrial injury and (2) claimant has been adequately compensated for her knee injury by the determination order.

Affirmed.