Argued and submitted May 2, 1984, reversed January 8, 1985

In the Matter of the Compensation
of Kevin D. Wheeler, Claimant.

## WHEELER,
*Petitioner - Respondent on Review,*

*v.*

## BOISE CASCADE CORPORATION,
*Respondent - Petitioner on Review.*

(81-06963; CA A26809; SC S30467)

693 P2d 632

Michael T. Garone, Portland, argued the cause for petitioner - respondent on review. With him on the brief was Jolles, Sokol & Bernstein, P.C., Portland.

Alan M. Muir, Portland, argued the cause for respondent - petitioner on review. With him on the brief was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

CAMPBELL, J.

## CAMPBELL, J.

This case arises as a result of an occupational disease claim filed on April 6, 1981. The hearings referee held that the claim was compensable citing *Hutcheson v. Weyerhaeuser,* 288 Or 51, 602 P2d 268 (1979). The Workers' Compensation Board on review reversed the referee stating that the claimant did not satisfy the requirements that: (1) the work conditions caused a worsening of the underlying disease, *Weller v. Union Carbide,* 288 Or 27, 602 P2d 259 (1979); and (2) that work conditions were the major cause of the worsening, *SAIF v. Gygi,* 55 Or App 570, 639 P2d 655 (1982).

The Court of Appeals reversed the Board by distinguishing *Hutcheson* and *Weller.* The Court of Appeals held that the record did not support the *Weller* and *Stupfel v. Edward Hines Lumber Co.,* 288 Or 39, 602 P2d 264 (1979), requirement that there be a worsening of the underlying condition. However, it held that because the claimant had been asymptomatic and not receiving medical care for his disease until he started work that the claim was compensable under *Hutcheson.* We reverse.

The following facts are excerpted from the Court of Appeals opinion and the Board's record. In the fall of 1979 after graduating from high school, claimant got a job at Anderson's Plywood as a glue spreader. While there, he suffered from a rash caused by "glue poisoning." The condition cleared up with medical treatment. He was laid off because of personnel cutbacks in February 1980 and remained unemployed until June 1980 when he went to work for Boise Cascade. He worked various jobs until October 1980 when he was permanently assigned as a green chain off bearer.

During the summer of 1980, claimant got a rash but it cleared up during the winter of 1980. By March 1981 the rash was again bothering claimant and he missed four or five days of work.

On April 6, 1981, claimant filled out a claim of Occupational Injury or Disease on which he claimed to be allergic to hemlock and glue. On April 14, 1981, the claim was "accepted" by Boise Cascade and claimant went to the doctor for diagnosis and treatment. Claimant was referred to a

dermatologist who diagnosed the problem as atopic dermatitis, an inherited predisposition to have sensitive skin. The dermatologist noted the following:

"1)   I feel fairly certain from the history that Mr. Wheeler has had a history of atopic dermatitis that began prior to his exposure at Boise Cascade.

"2)   I feel that his work activity has probably caused this problem to become symptomatic. Atopic individuals don't do well doing heavy exercise and activity which causes the patient to perspire. Many doctors feel that there is a defective sweat mechanism in these individuals.

3)   His normal living activities probably did contribute to his problem in that he was using fairly harsh body soaps and also was showering frequently because of the heavy perspiring that he does in his occupation.

"4)   I feel that the skin rash is a symptom of a pre-existing underlying condition.

"5)   As far as working at Boise Cascade causing the underlying worsening of the pathological condition I think that's debatable. Probably not. The individual may become symptomatic any time that his skin becomes dry or he has excess perspiration or wears clothing that may be irritating to the skin. He will always have a skin which will be easily irritated and may flare up at any time. With the passing years these problems may become less symptomatic.

"6)   As far as the clinical findings which support that conclusion I would feel that there are few objective findings except that the scaling of the skin leads me to believe he does have an atopic diathesis. From what I know about atopic individuals these individuals do get worse when they exercise and perspire. This could easily happen to persons not working however, and working out in the gym."

On June 2, 1981, Boise Cascade, based on the information from medical reports, denied that the medical problem was compensable.

At oral argument claimant argued that as a matter of law Boise Cascade could not deny the claim once it had accepted the claim. He cited as authority *Bauman v. SAIF*, 295 Or 788, 670 P2d 1027 (1983). In *Bauman,* this court ruled that:

"The insurer or self-insured employer is not at liberty to accept a claim, make payments over an extended period of

time, place the compensability in a holding pattern and then as an afterthought, decide to litigate the issue of compensability."

In *Bauman,* SAIF specifically accepted a claim as compensable and provided the claimant with an acceptance letter. SAIF then paid medical benefits for a period of three years before reversing its decision and denied compensability of the claim.

The controlling language in *Bauman* for this case is:

"If, as in this case, the insurer officially notifies the claimant that the claim has been accepted, *the insurer may not, after the 60 days have elapsed,* deny the compensability of the claim unless there is a showing of fraud, misrepresentation or other illegal activity." 295 Or at 794. (Emphasis added.)

■    The record in this case shows that Boise Cascade denied compensability within the 60-day time period. Therefore *Bauman* does not prohibit the denial of this claim.

The second issue raised is whether, in awarding compensation, the *Weller* critera can be set aside because *Hutcheson* created its own test for claimants who were asymptomatic before beginning employment.

The Court of Appeals rationale for distinguishing *Weller* and *Hutcheson* is as follows:

"If there is a distinction between *Weller* and *Stupfel,* on the one hand, and *Hutcheson,* on the other, it is not articulated in the court's opinions. However, the opinions were written with all three cases in mind; we assume, therefore, that there is a distinction, and we believe that it lies in the fact that in *Weller* and *Stupfel,* the claimants apparently were receiving medical attention before the claimed exacerbations of the symptoms at work. Therefore, the court held that the exacerbations were not compensable, because there was no worsening of the claimants' underlying conditions for which they were being treated. In *Hutcheson,* however, the claimant was asymptomatic and not being treated at the time of the exacerbation of symptoms at work. The court expressly stated that the mill conditions caused temporary exacerbation of the claimant's preexisting condition 'so as to require medical services *that would not have otherwise been necessary * * *.'* " *Wheeler v. Boise Cascade,* 66 Or App 620, 623, 675 P2d 499 (1984).

We disagree. *Hutcheson* is only an application of the rule in *Weller*. The requirements for a claimant to prevail were set forth in *Weller*[1] as follows:

"* * * we believe that in order to prevail claimant would have to prove by a preponderance of evidence that (1) his work activity and conditions (2) caused a worsening of his underlying disease (3) resulting in an increase in his pain (4) to the extent that it produces disability or requires medical services." 288 Or at 35.

The analysis in *Weller* was the analysis in *Stupfel*[2] and *Hutcheson*.[3] The points of *Hutcheson* were that (1) to be compensable, an occupational disease or injury does not have to *permanently* worsen the *condition,* (2) the level of proof necessary to substantiate a claim is by a preponderance of evidence and (3) the record in *Hutcheson* was strong enough to conclude that the preexisting *condition* was exacerbated, thus satisfying the *Weller* criteria.

■     The Court of Appeals in its analysis created a distinction that was not there. It did find that the underlying condition did not worsen and that the *Weller* criteria were not met. We are bound by the finding of fact that the underlying condition did not worsen. *Sahnow v. Fireman's Fund Inc. Co.,* 260 Or 564, 491 P2d 997 (1971). Therefore the plaintiff in this case cannot recover.

We hold that the *Weller* analysis is the appropriate analysis whether the conditions are symptomatic or

---

[1] In *Weller v. Union Carbide,* 288 Or 27, 602 P2d 259 (1979), claimant injured his back in a nonindustrial accident. His work as a crane operator caused pain but did not cause or aggravate his underlying disease. The *Weller* decision turned on the fact that element (2) of the test was not met, *i.e.,* a worsening of the underlying disease.

[2] In *Stupfel v. Edward Hines Lumber Co.,* 288 Or 39, 602 P2d 264 (1979), claimant suffered from chronic obstructive pulmonary disease and reactive airway disease. It was determined that the diseases were not caused by his work but that the work environment increased his symptomology. It was also determined that the work environment did not alter the progression of his underlying diseases. The four-part *Weller* . test was applied and because the underlying condition was not worsened by the work conditions, an increase in symptomology was not compensable.

[3] In *Hutcheson v. Weyerhaeuser,* 288 Or 51, 602 P2d 268 (1979), claimant suffered from a chronic obstructive pulmonary disease, sinusitis and bronchitis. The disease was originally caused by smoking but the evidence showed work conditions temporarily exacerbated the pre-existing "chronic obstructive pulmonary disease, sinusitus and bronchitis so as to require medical services that would not have otherwise been necessary." 288 Or at 56.

asymptomatic at the time of employment. The decision of the Court of Appeals is reversed and the decision of the Workers' Compensation Board is reinstated.