Argued and submitted September 7, 1984, reversed, referee's order reinstated
February 27, 1985

In the Matter of the Compensation of
Daryl R. Gabriel, II, Claimant.

GABRIEL,
*Petitioner,*

*v.*

HYSTER COMPANY,
*Respondent.*

(82-00800; CA A30822)

696 P2d 542

Dennis O'Malley, Portland, argued the cause for petitioner. With him on the brief was Willner, Bennett, Hartman & Tauman, P. C.

Bruce L. Byerly, Portland, argued the cause for respondent. With him on the brief was Moscato & Byerly, Portland.

Before Joseph, Chief Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

Claimant petitions for review of an order of the Workers' Compensation Board that reversed the opinion and order of the referee and denied his occupational disease claim for asthma. The issue is compensability. We reverse.

Claimant, at age 24, was employed by Hyster Company in September 1978. He worked initially as a painter. He had had asthma since childhood, with symptoms including rhinorrhea, nasal blockage, watery eyes and difficulty sleeping. Soon after he started working at Hyster, however, he experienced an acute asthma attack, during which he felt unable to breathe sufficiently. He contacted the employer's nurse, who advised him to rest; after resting he was able to resume working. He continued, intermittently, to experience similiar attacks and resorted to the use of non-prescription bronchial mist atomizers, which afforded some relief and allowed him to continue working.

On May 21, 1981, claimant experienced a severe attack while painting winches. He saw Dr. Baker on an emergency basis. Dr. Baker diagnosed asthma and prescribed several medications. That evening, claimant also sought treatment at the Providence Hospital emergency room, where a probable viral infection also was diagnosed. The doctor subsequently arranged for claimant to be tested for sensitivity to paints found in his work environment. An inhalation challenge test of the paints, which contained isocyanate-related chemicals, was performed at Providence Hospital on June 22, 1981, under the supervision of Dr. Lawyer. Claimant's exposure to the paints produced an asthma attack. Dr. Baker and Dr. Lawyer both advised claimant not to work around the paints. Claimant told employer of the physicians' advice, and employer transferred him to a job as a lift truck operator.

After his direct exposure to the paints terminated, claimant continued to have problems with shortness of breath and sleeping. The chart notes of Dr. Baker indicate that claimant went to the emergency room on September 29, 1981, and saw Dr. Baker the following day. The doctor indicated that he thought claimant was having an asthma exacerbation, etiology unknown. Claimant filed this claim for benefits on October 21, 1981. He continued to work at Hyster until October 31, 1981, when he was laid off as part of a general

workforce reduction. He experienced another severe asthma attack with an accompanying viral infection in January 1982.

Hyster delayed acceptance or denial of the claim until February 4, 1982, when it issued a "partial denial":

> "We are partially denying your claim. It is our position the paint to which you were exposed in October 21, 1981, caused, at most, a temporary aggravation of your pre-existing, underlying, chronic, obstructive, pulmonary disease. Your treating physician has advised that your condition returned to your pre-aggravation status as of at best October 28, 1981."

After a hearing, the referee found the claim compensable, on the basis that claimant's pre-existing asthma had worsened. The board reversed, apparently because it did not find the medical evidence to establish a permanent worsening of claimant's pre-existing asthma. On *de novo* review, we conclude that claimant has proved by a preponderance of the evidence that his claim is compensable, but for a reason different than that stated by the referee.

■ Preliminarily, we note that the medical evidence establishes that claimant's medical conditon involves two distinct diseases—chronic pre-existing asthma and isocyanate-induced asthma resulting from exposure to paints in the work environment. In a 1977 letter issued before claimant's employment with Hyster Company, Dr. Romanaggi described claimant as having perennial allergic rhinitis and recurrent episodes of acute asthmatic bronchitis, wheezing and dyspnea. Dr. Lawyer, on the basis of the paint inhalation tests, testified by deposition that claimant, while employed at Hyster, developed isocyanate-induced asthma from exposure to the paints. He characterized it as "[a] well-defined disease entity where asthma occurs in response to exposure to these isocyanate chemical hardeners that are used in some * * * paints," and noted that "having pre-existing asthma does not predispose [one] to develop isocyanate-induced asthma * * * [which is] as common in people without pre-existing asthma as in those that have preexisting asthma." Although the board ignored the fact that two diseases were involved, we find it necessary to consider them separately.

■ ■ We first consider claimant's isocyanate-induced asthma, which we conclude is an occupational disease, as statutorily defined:

"As used in ORS 656.802 to 656.824, 'occupational disease' means:

"(a)  Any disease or infection which arises out of and in the scope of the employment, and to which an employe is not ordinarily subjected or exposed other than during a period of regular actual employment therein." ORS 656.802(1)(a).

Claimant argues that he developed isocyanate-induced asthma, unrelated to his pre-existing asthma, and we find persuasive Dr. Lawyer's testimony that isocyanate-induced asthma is a discrete disease entity. It is undisputed that claimant was exposed to isocyanate-related chemicals in paints on the job; the medical evidence that exposure to those paints induced in claimant an asthmatic reaction is uncontroverted. Where, as here, on-the-job conditions are the major contributing cause, if not the sole cause, of an occupational disease, it is compensable. *See Dethlefs v. Hyster Co.,* 295 Or 298, 667 P2d 487 (1983). We conclude that claimant's isocyanate-induced asthma is a compensable occupational disease.

■ ■  Claimant also contends that the development of isocyanate-induced asthma is itself a worsening of his chronic asthmatic disease, meeting the criteria for compensability of a pre-existing disease set out in *Weller v. Union Carbide,* 288 Or 27, 602 P2d 259 (1979). We are not persuaded. To establish compensability under the *Weller* standard, a claimant must prove "that (1) his work activity and conditions (2) caused a worsening of his underlying disease (3) resulting in an increase in his pain (4) to the extent that it produces disability or requires medical services." 288 Or at 35. *See Wheeler v. Boise Cascade,* 298 Or 452, 693 P2d 632 (1984). On the basis of our *de novo* examination of the evidence, we conclude that claimant has failed to establish the second element of that test.

■  In his second and third assignments of error, claimant contends that Hyster's "partial denial" was an improper attempt to circumvent the claim closure procedures of ORS 656.268, *see Safstrom v. Riedel International, Inc.,* 65 Or App 728, 672 P2d 392 (1983), *rev den* 297 Or 124 (1984), and that Hyster's delay in accepting or denying the claim entitle him to penalties and attorney fees pursuant to ORS 656.262(10). On appeal, Hyster has conceded that the "partial denial" actually was a full denial of compensability and that claimant is

entitled to the statutory penalty and attorney fees if claimant prevails on the issue of compensability. We agree. Accordingly, we do not discuss the "partial denial" issue and reinstate the referee's award of a statutory penalty and attorney fees.

Reversed; referee's order reinstated.