Argued and submitted May 2, reversed and remanded November 20, 1985

In the Matter of the Compensation of
Dennis D. Grace, Claimant.

GRACE,
*Petitioner,*

*v.*

SAIF CORPORATION,
*Respondent.*

(WCB No. 83-01053; CA A31584)

709 P2d 1146

William Schultz, Portland, argued the cause for petitioner. With him on the brief were Robert K. Udziela, David A.

Hytowitz, and Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Darrell E. Bewley, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

**ROSSMAN, J.**

Claimant seeks compensation for treatment and temporary total disability for a disabling psychological condition. The Workers' Compensation Board held that his psychological condition was not related to his industrial injury and that he was otherwise medically stationary. On *de novo* review, we reverse and remand.

Claimant suffered a compensable back injury on June 19, 1980. His claim was closed in September, 1980, with an award of temporary total disability, but it was reopened in 1982 for additional treatment, including back surgery. He was thereafter determined to be physically medically stationary, and that determination is not challenged. Claimant has a history of psychological problems and treatment. In August, 1982, he told a doctor that he was severely depressed. A vocational counselor referred claimant to Dr. Colistro, a psychologist, who, on November 15, 1982, diagnosed severe depressive reaction, exacerbated by excessive alcohol use, family problems and a preexisting psychological disorder known as "avoidant personality."

Claimant stated that he has a fear of people; in his present condition he would prefer to work alone, and he envisions himself suitable for employment as a shepherd or lighthouse keeper. He told Colistro that he was having problems with his teen-aged daughter, because he was home all the time, in pain and unable to control her. Colistro originally believed, based on what claimant told him, that his psychological condition was 50 percent due to the injury and 50 percent due to other conditions. He authorized 60 days of treatment and time loss for the purpose of allowing himself to get to know claimant. As he treated claimant, his perception changed, based on claimant's unwillingness to reduce his alcohol consumption. Additionally, Colistro became aware that claimant's family problems were "dominating his whole life." On December 22, 1982, after seven or eight therapy sessions, Colistro met with claimant and his rehabilitation counselor. Colistro stated in his report:

> "* * * We confronted Mr. Grace with the fact that he must make a decision to overcome his fear of being with other people. That if he does not then no psychological or vocational rehabilitation assistance would be feasible. * * *"

At the same meeting, Colistro was apparently pleased with claimant's success in abstaining from drinking beer. Colistro reported:

"*Analysis:* Progress satisfactory; patient is making a concerted effort to benefit from treatment. He is taking antabuse as prescribed and thus has not been drinking for the past two weeks. His commitment today is also impressive, provided he sticks by it.

"*Plan:* See him early in January."

One week later, at the end of the 60-day authorized treatment time, Colistro changed his mind and decided to stop treatment. He testified that, in his opinion, claimant did not wish to solve his own problems and that continued treatment would prolong, rather than resolve, them. On December 30, 1982, he reported that claimant was unwilling to participate in vocational rehabilitation. He stated that claimant's psychological problems were not related to his injury, but were preexisting, and found him to be psychologically medically stationary. Claimant continued to receive counseling from his rehabilitation counselor. Colistro's report regarding claimant's unwillingness to cooperate with the vocational counselor was contradicted by a January 19, 1983, report from the counselor, who indicated that, in spite of continued drinking, claimant could benefit from vocational assistance and that he had demonstrated motivation to work with her. He had, in fact, accepted a job offer in late December, although it later fell through.

On January 27, 1983, a determination order awarded 15 percent unscheduled permanent partial disability for the back injury but nothing for the psychological condition. In February, 1983, claimant, at his own expense, began seeing Dr. Johnson, a psychiatrist, who expressed the opinion that claimant was not psychologically medically stationary and that his condition was due, in material part, to the back injury.

In his report of May 14, 1983, Johnson stated:

"Because of the low acceptance of his self and the little self-esteem he had as a child, the loss of ability to work was more threatening to him than it would have been to another person. As his self-esteem was threatened by his disability, other relationships became threatened and he began to have more difficulty in the home, relating to his wife and children.

"* * * * *

"It is my opinion that had he not had the back injury, his feeling of self-worth and his acceptance would have gone on in a more positive way as he would have continued working and providing sufficient income to give his family a good standard of living."

The referee concluded that claimant was not medically stationary and that his claim should be reopened for further treatment of the psychological condition and the payment of time loss benefits. He therefore did not consider the question of the extent of permanent disability. Employer sought review, and the Board, persuaded by Colistro's opinion, held that claimant no longer suffers from any residual psychological effects of his injury and that his present psychological condition is not related to his injury. The Board remanded the case to the referee for a determination of the extent of disability, and claimant sought review here.

■    SAIF moved to dismiss this review on the ground that the Board's decision was not a final order. That would be true if the Board had only made a determination as to whether claimant was medically stationary. *See Dean v. SAIF,* 72 Or App 16, 695 P2d 90 (1985). However, the Board has also held that claimant's psychological condition was not compensably related to his industrial injury and that there was no remaining psychological disability from the injury. Such a decision is final and subject to review. *Price v. SAIF,* 296 Or 311, 675 P2d 479 (1984).

■    On the merits of the claim, we conclude that claimant was not medically stationary on the date of closure. The parties agree that, from a psychological standpoint, he is in need of further treatment; in the medical sense, he is not "stationary." SAIF contends, however, that claimant's psychological problem is not the result of his injury and that, for the purposes of workers' compensation, he is stationary. Thus, the case comes down to causation: Was claimant's work injury a material cause of his psychological disability? *Jeld-Wen, Inc. v. Page,* 73 Or App 136, 698 P2d 61 (1985).

In determining whether claimant is entitled to medical services and time loss, SAIF would have us apply the rule of *Wheeler v. Boise Cascade,* 298 Or 452, 693 P2d 632 (1984), *Hutcheson v. Weyerhaeuser,* 288 Or 51, 602 P2d 268 (1979),

and *Weller v. Union Carbide,* 288 Or 27, 602 P2d 259 (1979), that the underlying condition must have been worsened to be compensable. Those cases dealt with the compensability, in the first instance, of a preexisting disease. This case is different in that, as in *Partridge v. SAIF,* 57 Or App 163, 643 P2d 1358, *rev den* 293 Or 394 (1982), and *Jameson v. SAIF,* 63 Or App 553, 665 P2d 379 (1983), a compensable injury has intervened.

Of what effect, if any, is the intervening compensable injury on claimant's burden of proof? In *Partridge,* the claimant had a preexisting psychiatric condition which she alleged was related to a compensable knee injury. We cited *Hutcheson* for the proposition that the claimant must show that the preexisting condition was "worsened" by the compensable injury. *Hutcheson* stated the rule that, if work conditions "caused temporary exacerbation" of the preexisting condition "so as to require medical services that would not have otherwise been necessary," the condition was compensable. In *Wheeler,* the Supreme Court explained *Hutcheson* to hold that the claimant, in seeking compensation for the worsening of a preexisting noncompensable disease, must show, as stated in *Weller,* that the *underlying condition,* and not just the symptoms, had worsened.

It is not clear whether our decision in *Partridge* gave the same interpretation to *Hutcheson;* however, we purported to apply it. We held that the need for psychological treatment was only circumstantial evidence of a worsened condition and that the more persuasive evidence indicated that there was *no causal connection* between the claimant's compensable injury and her psychological problems. Our reliance on *Hutcheson* was not truly essential to our decision in *Partridge,* because we found no causal relationship between the claimant's *psychological symptoms* and her injury.

In *Jameson,* a work-related injury caused the claimant's preexisting noncompensable lipoma to increase pressure on the nerve root, thereby causing symptoms of low back pain requiring treatment. The medical evidence was ambiguous as to whether the accident aggravated the lipoma or merely aggravated the symptoms. We first reasoned that, because the case involved an injury rather than an occupational disease, the rule in *Weller* was not applicable. We held that, because

the compensable injury had caused increased symptoms of the lipoma, the treatment of the symptoms was compensable. We conclude that the same analysis applies here and that *Wheeler* and *Weller* are not controlling, because of the intervening compensable injury.

Colistro's testimony indicates that he concluded that claimant's condition was chronic and that it had not been materially or permanently "worsened" by the injury. He agreed that the source of claimant's current bout of depression was his preexisting condition, coupled with alcohol and family problems. On cross-examination, he expressly stated that he made no effort to determine whether claimant's family and drinking problems were exacerbated by his injury: "I guess I kind of don't care where they came from, I care about changing them." Johnson, on the other hand, specifically reported that claimant's work injury in June, 1980, created greater difficulty at home. In his opinion, the injury was a material contributing factor to the psychological disability.

Here, as in *Jameson,* we find by a preponderance of the evidence that claimant's current disability was brought on by his compensable injury. His family and drinking problems are tightly related to his psychological problem, and the injury has adversely affected them. Although the injury may not have worsened his underlying psychological condition, it did precipitate the symptoms which he now experiences. That is sufficient to make his condition compensable.

Reversed and remanded.