Argued and submitted February 7, affirmed August 13, 1986

In the Matter of the Compensation of
Liz A. Destael, Claimant.

DESTAEL,
*Petitioner,*

*v.*

NICOLAI COMPANY et al,
*Respondents.*

(83-04946, 83-04947; CA A35807)

723 P2d 348

Kathryn H. Clarke, Portland, argued the cause and filed the brief for petitioner.

Kenneth L. Kleinsmith, Portland, argued the cause for respondents. On the brief were Daniel L. Meyers and Meyers & Terrall, Portland.

Before Joseph, Chief Judge, and Van Hoomissen and Young, Judges.

JOSEPH, C. J.

## JOSEPH, C. J.

Claimant seeks review of a Workers' Compensation Board order which denied her an award of permanent partial disability (PPD) for the impairment resulting from her low back condition. The referee had found that her back condition was causally related to an industrial injury of October, 1981, and had reversed employer's denial of responsibility for that condition. On review, the Board reversed the referee and found that the back condition was not related to the industrial injury. On *de novo* review, we affirm.

Claimant is a 32-year-old woman who has been employed by employer since 1975. In 1980, she was operating a ripsaw when she stooped to raise a heavy board from the floor and injured her upper back. Dr. Mayer, a chiropractor, has treated her for pain from that injury, but she has had no time loss. Employer accepted the claim for the upper back injury. In October, 1981, she was feeding a piece of wood into a ripsaw when it suddenly reversed and ejected two pieces of wood. One of them struck claimant with sufficient force that it penetrated her clothing and was imbedded 4-1/2 inches in her abdomen. She was hospitalized for approximately one week and did not return to work until January, 1982. Employer accepted the claim for the injury on November 2, 1981.[1] Claimant testified that she began feeling low back pain while still in the hospital recuperating from the wound. However, the doctor who performed the surgery and did the follow-up examinations, at least through December, 1981, did not make note of any low back pain in his medical reports.

In April, 1982, Mayer reported that claimant had chronic left side lumbar pain. He had been treating her since January, 1982, but that was the first mention of low back pain. He attributed that pain to deteriorating spinal stability as a result of the impact in the 1981 accident. In July, 1982, Mayer reported that claimant would have permanent spinal impairment as a result of the accident. Employer then referred her to

---

[1] Claimant does not assert that her low back injury is attributable to the 1980 accident. In addition, the parties stipulated, wrongly or rightly, that the 1984 Determination Order that closed the 1980 claim and awarded claimant low back disability was really meant to close the 1981 claim, even though a 1983 determination order had specifically already closed the latter claim.

Dr. Gatterman, another chiropractor, for evaluation of disability and an opinion on the advisability of continuing chiropractic treatment. Gatterman recommended against further chiropractic treatment and did not note any rateable spinal impairment. Claimant was then referred to Dr. Howell, an osteopathic physician, who recommended treatment for the upper back and neck only and found minimal lumbar dysfunction "perhaps related to the October, 1981, incident."

In October, 1982, claimant began treatments with Dr. Gritzka, an orthopedist, who diagnosed a chronic lumbosacral sprain superimposed on unilateral spondylolysis and a congenital "batwing" anomaly. He explained that many people who have that anomaly are asymptomatic. He indicated that trauma can stretch the ligament which gives stability to the anomaly, rendering it unstable and causing pain. Symptoms can also be caused by simple degeneration. He treated her by prescribing medication and a back brace. The medication was not beneficial and was discontinued. He then administered injections into the area of the anomaly. That initially was very beneficial, but each succeeding treatment had less effect.

After Gritzka's diagnosis of the anomaly, Howell again examined claimant to determine if her current treatment was necessitated by the effects of the anomaly or by the effects of the October, 1981, injury. He reported that he had difficulty in understanding how the abdominal injuries could have resulted in the batwing area becoming symptomatic; however, on the basis of the fact that claimant had had no low back symptoms until after the 1981 injury, he concluded that the incident did contribute to her current disability.

Employer also had claimant examined by Dr. Robinson, who diagnosed a lumbar strain and contusions superimposed on congenital anomalies of the lower back. He concluded that she does have a permanent mild low back impairment related to the underlying anomaly and a minimal low back impairment related to the injury. He stated that the underlying anomaly played a major part in her present problem, even though the symptoms followed the 1981 injury. Gritzka expressly agreed with those conclusions in 1983. In March, 1984, he apparently changed his mind and concluded that 75 percent of her present symptoms are attributable to the October, 1981, injury. Shortly before the hearing, which

she had requested on the extent of PPD, employer wrote her a letter denying further compensation for treatment of or disability for the low back condition.

■ Claimant argues that the Board erred in finding that the low back symptoms were not causally related to the 1981 injury. The Board found that she did not carry her burden of persuasion, and we agree. The question is whether the on-the-job injury was a material contributing cause of the complained of condition. *Jeld-Wen, Inc. v. Page,* 73 Or App 136, 698 P2d 61 (1985); *see also Grace v. SAIF,* 76 Or App 511, 709 P2d 1146 (1985).[2] The medical evidence in this case generally reflects a belief that the 1981 injury is related to the low back pain, but it does not establish that the abdominal injury was a material contributing cause of the low back pain. Mayer and Gritzka concluded that the 1981 injury caused the low back condition but based that on nothing more than the fact that the pain did not begin until after the 1981 injury. Neither doctor offered an explanation for why the low back pain remained unreported for six months after the alleged causal incident. We give no special credit to the testimony of the treating doctors in this case. *See Hammons v. Perini Corp.,* 43 Or App 299, 602 P2d 1094 (1979). Gatterman found no rateable spinal impairment. Howell found minimal lumbar dysfunction and thought that it was "possible" that it could have been related to the 1981 injury. Robinson found permanent, mild impairment of the low back due to the congenital anomaly and minimal, nonpermanent impairment related to the injury. That evidence does not persuade us that the abdominal injury was a material contributing cause of the low back symptoms.

■ Claimant also argues that the Board did not have authority to set aside the permanent partial disability award in the 1984 determination order, because employer did not contest it. The Board reviewed the referee's order, which had adopted the determination order award. The Board has *de novo* review and is free to make any disposition of the case it deems appropriate. ORS 656.295(6); *Russell v. A & D Terminals,* 50 Or App 27, 31, 621 P2d 1221 (1981). The Board's

---

[2] It may well be that the test of "a material contributing cause" is of little or no practical utility in a case like this. The only contested issue is whether the abdominal injury is causally related to the back condition. That ought to be only a matter of medical testimony to be tested by the preponderance of the evidence standard. The language of the cases, however, dictates the other test.

decision was within its authority.

█ She next argues that employer is foreclosed from denying responsibility for her low back condition on the basis of *Bauman v. SAIF,* 295 Or 788, 794, 670 P2d 1027 (1983), in which the court held that, once an employer has accepted a claim, it may not later deny it after 60 days have elapsed since notice of the claim, unless there is a showing of fraud, misrepresentation or illegal activity. In this case, employer accepted the abdominal injury claim on November 2, 1981. The scope of the acceptance is governed by the notice or knowledge that the employer has of the nature of claimant's condition at the time of its acceptance. ORS 656.262(6);[3] *Johnson v. Spectra Physics,* 77 Or App 1, 5, 712 P2d 125 (1985), *rev allowed,* 301 Or 165 (1986). In *Spectra Physics,* the employer had notice, from a doctor's report, that the claimant had a carpal tunnel syndrome relating to her back injury. The employer accepted the claim after receiving that report. We held that the scope of the acceptance of the back injury claim included the carpal tunnel syndrome, because employer had notice and knowledge that it related to the back injury. In this case, when employer accepted the abdominal injury claim, it had neither notice nor knowledge that claimant was suffering from low back pain as a result of that injury. There is no report of low back pain until Mayer's 1982 letter to employer. The scope of employer's acceptance in November, 1981, therefore, did not include the low back.

The remaining assignment of error relates to the extent of permanent disability, and on the basis of our conclusion of noncompensability it does not require discussion.

Affirmed.

---

[3] ORS 656.262(6) provides, in part:

"Written notice of acceptance or denial of the claim shall be furnished to the claimant by the insurer or self-insured employer within 60 days after the employer has *notice or knowledge* of the claim. Pending acceptance or denial of a claim, compensation payable to a claimant does not include the costs of medical benefits or burial expenses. The insurer shall also furnish the employer a copy of the notice of acceptance." (Emphasis supplied.)