Argued and submitted May 11, reversed on claim for medical services and on deposition costs and remanded for further proceedings June 22, 1988

In the Matter of the Compensation of
Dale E. Senters, Claimant.

SENTERS,
*Petitioner,*

*v.*

SAIF CORPORATION et al,
*Respondents.*

(WCB 84-10736; CA A44546)

756 P2d 693

David B. Force, Eugene, argued the cause and filed the brief for petitioner.

Darrell E. Bewley, Assistant Attorney General, Salem,

argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warden, Presiding Judge, Graber, Judge, and Riggs, Judge pro tempore.

GRABER, J.

## GRABER, J.

In this workers' compensation case, the Board adopted the order of the referee, which affirmed two denials by SAIF Corporation (SAIF) and taxed deposition costs to claimant. Claimant petitions for review and assigns error to the denials of his separate claims for medical services and for disability and to the award of litigation costs to SAIF. We reverse as to the claim for medical services and the deposition costs.[1]

Claimant suffered a compensable neck and back injury on May 16, 1984, while working as a logger. He fell from a log and tumbled down a hill. X-rays showed a compression fracture of the C6 vertebra. No complaints were made or recorded at that time regarding claimant's right hip.

Claimant was taken off work for two weeks. On August 29, 1984, he was released for regular work and found to be medically stationary. A determination order, issued on October 3, 1984, awarded temporary total disability benefits from May 17 through October 3, 1984. Claimant filed a request for hearing to challenge the lack of an award for permanent disability.

In February, 1985, claimant began to experience further trouble with his neck. On referral from his treating orthopedic physician, Dr. Filarski, he saw Dr. Mundall, who noted his inability to straighten and walk comfortably on his right leg. Mundall was unsure of the cause. Filarski then said that he had made no notation regarding claimant's awkward gait, although he had noticed it earlier. Because of claimant's lanky appearance and gawky gait, Filarski had simply assumed that he had a chronic internal rotation contracture of the right hip.

In July, 1985, Dr. Rockey evaluated claimant and found that he had sustained a fracture through his right acetabulum, causing formation of some loose bodies in the right hip. Also in July, Dr. Michels performed a CT scan of the hip joint and determined that there were loose bodies present.

---

[1] Our review is *de novo*. We obtained jurisdiction of this case before Or Laws 1987, ch 884, § 12a, changed the standard of review in workers' compensation cases. *See Armstrong v. Asten-Hill Company*, 90 Or App 200, 752 P2d 312 (1988).

Dr. Miller performed a right hip arthrogram. His impression was that there were degenerative changes, which were post-traumatic. Upon review of those findings, Filarski concluded that claimant's right hip problems were related to the 1984 fall; Rockey concurred. Claimant's hip pain became progressively worse, and surgery was recommended.

On August 16, 1985, SAIF issued a partial denial for medical services relating to the right hip. Claimant filed a supplemental request for hearing to challenge SAIF's denial.

A hearing was held on September 24, 1985, and the record was left open to receive further evidence. After the hearing, but before the deposition of Filarski, claimant was diagnosed as suffering from parathyroid disease, which causes a weakening of the bones. Filarski testified in deposition that it was not possible for that pre-existing condition to be the sole cause of claimant's hip condition.

In November, 1985, claimant was advised to have infected teeth extracted before surgery, to reduce the danger of infection. Although the extraction was medically prudent anyway, Filarski believed that it was necessary before surgery. On March 5, 1986, SAIF issued a denial for the expenses relating to the tooth extraction.

Filarski operated on claimant's right hip in April, 1986. Claimant's infected teeth had been extracted earlier. Filarski diagnosed a hip fracture and stated that his findings during surgery "totally support[ed] a traumatic injury mechanism dating back to May 16, 1984. Progressive reactive bone formation and synovitis probably [were] responsible for the apparent delayed symptoms." The pathology report supports those findings.

SAIF's expert, Dr. Norton, reviewed claimant's medical records, Filarski's deposition, and the surgery reports. He concluded that claimant's fall could not have contributed to the pathology in the hip and that claimant's hip problems could occur spontaneously as a result of the disease process, totally independently of trauma. Dr. Becker, who had examined claimant before the surgery, had reached the same conclusion.

Claimant must prove his claim by a preponderance of the evidence. *Lenox v. SAIF,* 54 Or App 551, 553, 635 P2d 406

(1981). The issue is whether his on-the-job injury was a material contributing cause of the hip condition. *Destael v. Nicolai Co.*, 80 Or App 596, 600, 723 P2d 348 (1986).

■    Filarski thought that claimant's right hip condition was related to his May, 1984, fall. The parathyroid disease simply made the result worse than it might have been otherwise. "A worker is entitled to compensation for the disabling results of work activity, even if a pre-existing condition also plays a causative role in the disability." *Taylor v. SAIF*, 75 Or App 583, 586, 706 P2d 1023 (1985). An injury need not be the sole, or even the principal, cause of a disabling condition if it contributed to the disability, because the employer takes the worker as he finds him. *Aquillon v. CNA Insurance*, 60 Or App 231, 236, 653 P2d 264, *rev den* 294 Or 460 (1982).

■    Norton, in contrast, believed that claimant's disease was the sole cause of his hip condition. That conclusion rested on two basic premises. First, Norton said that there was no persuasive evidence that an injury to the hip had occurred at all. However, claimant testified that his right hip was bruised after the fall and that he suffered no other injury to his right hip between May, 1984, and the time of the surgery. The referee found claimant generally credible, and we give substantial weight to that finding. *Pinkerton, Inc. v. Brandner*, 83 Or App 671, 674, 732 P2d 949 (1987). Claimant's testimony is supported by Filarski's observation that claimant had exhibited an unusual gait and by the nature of the accident, which involved falling and rolling down a hill. Because the primary concern immediately after the accident was claimant's potentially serious neck injury, we have no reason to question the failure to identify claimant's hip problem immediately.

Norton also relied on the delay in claimant's symptoms, stating that claimant could not have sustained a hip fracture in the fall without experiencing immediate disabling pain. Although that diagnosis might be correct in the usual patient, Filarski provided a cogent medical explanation for why claimant is different. He also treated claimant, observed him over a long period, and performed the surgery. Norton never examined claimant.

"When medical evidence is divided, we tend to give

greater weight to the conclusions of a claimant's treating physician, unless there are persuasive reasons not to do so." *Taylor v. SAIF, supra,* 75 Or App at 585. Here, Filarski was in a superior position to evaluate claimant's condition. *See Jordan v. SAIF,* 86 Or App 29, 33, 738 P2d 588 (1987). We find Filarski's analysis and conclusions to be more persuasive.

Claimant has shown by a preponderance of the evidence that his right hip condition resulted from his injuries in the May, 1984, incident. SAIF is responsible for all reasonable and necessary expenses associated with the on-the-job injury. ORS 656.245; *Hansen v. Weyerhaeuser Company,* 89 Or App 349, 353, 749 P2d 1183 (1988). Those expenses include both the hip surgery and the tooth extraction. *See Van Blokland v. Oregon Health Sciences University,* 87 Or App 694, 698, 743 P2d 1136 (1987).

■ The final issue involves the expenses associated with the deposition of Filarski. The referee and the Board required that claimant pay 30 per cent of the cost, on the ground that the deposition was taken partly on his behalf. Filarksi was claimant's witness. The procedure under ORS 656.310(2) of offering medical testimony through a written report, subject to cross-examination,

> "does not alter the status of the witness when he is called for the purposes of cross-examination. He still remains the witness of the party offering the medical reports and that party is responsible for paying the fees and expenses incident to his appearance as a witness for cross-examination." *Hanna v. McGrew Bros. Sawmill,* 44 Or App 189, 195, 605 P2d 724, *mod* 45 Or App 757, 609 P2d 422 (1980).

*Former* ORS 656.236(2) did not prohibit the assessment of deposition costs to a claimant, as opposed to the insurer that made the argument in *Hanna.* The "costs" referred to in that section meant the cost of funding workers' compensation benefits or of securing coverage for employes. *See Hanna v. Fairview Hospital,* 91 Or App 448, 756 P2d 42 (1988); *see also Welch v. Banister Pipe Line,* 82 Or App 23, 727 P2d 140 (1986).

Nonetheless, the costs here are not required to be taxed, in whole or in part, to claimant. Because claimant prevails on the merits of his claim and because the deposition was taken at SAIF's request and primarily for its benefit, we hold that SAIF must pay for all of Filarski's deposition.

Reversed on the claim for medical services and on deposition costs; remanded for further proceedings not inconsistent with this opinion.