Argued and submitted July 2, 1986, Court of Appeals affirmed in part, reversed in part
and remanded to Court of Appeals for further determination March 17,
reconsideration denied April 21, 1987

In the Matter of the Compensation of
Charlotte J. Johnson, Claimant.

JOHNSON,
*Respondent on Review,*

*v.*

SPECTRA PHYSICS et al,
*Respondents on Review,*

EBI COMPANIES et al,
*Petitioner on Review.*

(WCB Nos. 83-02119, 83-02685, 83-10719;
CA A33862; SC S32604)

733 P2d 1367

Jerald P. Keene, Portland, argued the cause for petitioner on review, Junction City Residential Center/EBI Companies. With him on the petition for review was Roberts, Reinisch & Klor, P.C., Portland.

David C. Force, Eugene, argued the cause for respondent on review, Charlotte J. Johnson.

Darrell E. Bewley, Assistant Attorney General, Salem, argued the cause for respondent on review, SAIF Corporation.

Before Peterson, Chief Justice, and Lent, Linde, Campbell, Carson and Jones, Justices.

CARSON, J.

## CARSON, J.

In this workers' compensation case, claimant seeks compensation from two previous employers for her carpal tunnel syndrome.[1] One employer, Marloc Corporation (Marloc), denied compensability. The other employer, Junction City Residential Center (Junction City Center), accepted claimant's back injury claim but denied responsibility for her carpal tunnel syndrome.[2] The issue on review is whether Junction City Center's denial is barred by ORS 656.262(6),[3] as construed in *Bauman v. SAIF*, 295 Or 788, 790, 670 P2d 1027 (1983), which forbids insurers from denying previously accepted claims.

The referee upheld the denials of both employers and the Workers' Compensation Board (Board) affirmed. The Court of Appeals reversed, holding that claimant had proven that her carpal tunnel syndrome arose out of and in the scope

---

[1] Dr. Jewell, a hand surgeon who testified at claimant's hearing of November 17, 1983, described the carpal tunnel syndrome as

"* * * the manifestation of compression of the median nerve at the wrist. The most common cause for carpal tunnel is what's known as a nonspecific tenosenovitus [sic]. By that, I mean that the enveloping membranes which cover the nine tendons which pass through the carpal tunnel get inflammed [sic] and produce swelling which causes compression and subsequent lack of function within the median nerve."

[2] Spectra Physics employed claimant from October 19 until December 24, 1981. Although its name appears in this case's title, Spectra Physics is not a party to this dispute.

[3] ORS 656.262(6) provides:

"Written notice of acceptance or denial of the claim shall be furnished to the claimant by the insurer or self-insured employer within 60 days after the employer has notice or knowledge of the claim. Pending acceptance or denial of a claim, compensation payable to a claimant does not include the costs of medical benefits or burial expenses. The insurer shall also furnish the employer a copy of the notice of acceptance. The notice of acceptance shall:

"(a) Advise the claimant whether the claim is considered disabling or nondisabling.

"(b) Inform the claimant of hearing and aggravation rights concerning nondisabling injuries including the right to object to a decision that the injury of the claimant is nondisabling by requesting a determination thereon pursuant to ORS 656.268.

"(c) Inform the claimant of employment reinstatement rights under ORS chapter 659.

"(d) Inform the claimant of assistance available to employers for job site modification under ORS 656.622."

of her employment at Marloc, that Junction City Center's denial was invalid, and remanded to the Board.[4] We affirm in part and reverse in part.

Claimant worked for Marloc from 1969 until January 14, 1981. Claimant's work included hand sanding, shearing plastic, screen printing, riveting and sawing, work that required strenuous, repetitive labor with her wrists and hands. From June 2, 1982, until February 17, 1983, she worked as a waitress for Junction City Center, a care home for the elderly. Her work at Junction City Center included carrying trays of dishes and food, washing dishes and busing dishes in containers weighing up to 40 pounds.

On September 5, 1982, claimant injured her back and right arm while carrying dishes. She filed a claim against Junction City Center on November 4, 1982. On her claim form, the space for "NATURE OF INJURY OR DISEASE" stated "BACK INJURY"; the space for "PART OF BODY AFFECTED" stated "MIDDLE BACK & ARM." A space adjacent to the latter space provided blocks to indicate "LEFT" or "RIGHT." Claimant placed an "X" in the "RIGHT" block. The claim form did not refer to the carpal tunnel syndrome. No one had diagnosed the condition when claimant filed the claim form.

Claimant sought initial treatment from a chiropractor, Dr. Hill, on October 14, 1982. Dr. Hill's first medical report was sent to Employee Benefits Insurance Company (EBI), Junction City Center's insurer, on October 21, 1982. Dr. Hill described claimant's condition as "[a]cute traumatic subluxation strain of the cervical spine with a paravertebral myofascitis and right extension brachial neuralgia" (strain of the upper back with pain radiating down the right arm).

On November 16, 1982, claimant consulted a neurosurgeon, Dr. Tsai, about her back and arm injuries. Dr. Tsai diagnosed an upper thoracic strain and the bilateral carpal

---

[4] We note that SAIF moved the Court of Appeals for reconsideration to clarify the court's instructions on remand to the Board. The motion was denied. Once it had been determined that Junction City Center's insurer, Employee Benefits Insurance Company (EBI), had accepted the carpal tunnel syndrome claim, a determination of responsibility was unnecessary. As the result of the application of the rule in *Bauman v. SAIF*, 295 Or 788, 670 P2d 1027 (1983), EBI became the responsible party by virtue of its alleged original allowance of the claim.

tunnel syndrome and decided that both were related to claimant's work. On November 22, 1982, EBI received Dr. Tsai's medical report, which, after noting the above-mentioned diagnosis, stated that "[n]o neurosurgical, diagnostic or therapeutic procedure is indicated at this time." On December 1, 1982, EBI accepted claimant's claim for the back injury on the same form that she had submitted.

On February 1, 1983, claimant saw another neurosurgeon, Dr. Campagna. Dr. Campagna, more concerned with claimant's back injury than with her carpal tunnel syndrome, cursorily asked her whether she had done repetitive work such as needlepoint. She replied that she occasionally crocheted. Dr. Campagna concluded that claimant's crocheting caused the carpal tunnel syndrome; he did not ask her about her work at Marloc or Junction City Center.

On February 10, 1983, 80 days after EBI received Dr. Tsai's medical report, EBI notified claimant that it "must respectfully deny your claim for medical, surgical and time loss benefits as it relates to your condition of bilateral carpal tunnel syndrome not being related to your industrial claim and injury of September 5, 1982." EBI's letter added that "we are still processing your claim under ORS 656.245 (Medical Services) as it relates to your thoracic sprain as a result of your industrial injury of September 5, 1982."

On February 18, 1983, Dr. Campagna performed carpal tunnel release surgery on claimant's wrists. On February 24, 1983, claimant filed an occupational disease claim against Marloc for the carpal tunnel syndrome. Marloc's insurer, SAIF, denied the claim on March 16, 1983.

Dr. Jewell, a hand surgeon, examined claimant on October 28, 1983. He concluded that claimant's work at Marloc, not her occasional crocheting, had caused the carpal tunnel syndrome. In January 1984, Dr. Campagna first learned of claimant's work at Marloc. He then agreed with Dr. Jewell that claimant's work at Marloc had caused her carpal tunnel syndrome.

The referee found that claimant's condition was not a compensable occupational disease chargeable to Marloc. The

Board affirmed the referee.

■    ORS 656.802(1)(a) provides:

"As used in ORS 656.802 to 656.824, 'occupational disease' means:

"Any disease or infection which arises out of and in the scope of employment, and to which an employe is not ordinarily subjected or exposed other than during a period of regular actual employment therein."

The Court of Appeals reversed the Board, concluding that "claimant proved by a preponderance of the evidence that her carpal tunnel syndrome arose out of and in the scope of her employment at Marloc." *Johnson v. Spectra Physics,* 77 Or App 1, 5, 712 P2d 125 (1985). In workers' compensation cases, we do not disturb findings of fact by the Court of Appeals if the findings are supported by evidence. *Sahnow v. Fireman's Fund Ins. Co.,* 260 Or 564, 569, 491 P2d 997 (1971). There is evidence to support the finding that claimant's occupational disease is compensable as to Marloc.

The referee also found that EBI properly denied responsibility for claimant's carpal tunnel syndrome. The Court of Appeals reversed, concluding that the denial violated the rule of *Bauman v. SAIF, supra.*

*Bauman* holds that "once an insurer has accepted a claim under ORS 656.262(6), which requires acceptance or denial of a workers' compensation claim within 60 days after the employer has notice or knowledge of the claim, the insurer may not subsequently deny the compensability of the underlying claim." 295 Or at 790. In *Bauman,* the insurer had accepted the claimant's original claim for bursitis. Two and one-half years later, the claimant's condition worsened and his physician asked the insurer to reopen the claim. The insurer then reversed its original acceptance. This court held that an insurer could not deny a condition that it already had accepted because such vacillation "would encourage degrees of instability in the workers' compensation system that we do not believe the statute contemplates." *Id.* at 793. We continued: "If, as in this case, the insurer *officially notifies* claimant that the claim has been accepted, the insurer may not, after the 60 days have elapsed, deny the compensability of the claim unless there is a showing of fraud, misrepresentation or

other illegal activity." *Id.* at 794. (Emphasis added.) As the Court of Appeals noted in *Jeld-Wen, Inc. v. McGehee,* 72 Or App 12, 14-15, 695 P2d 92 (1985), *Bauman* recognizes that retrospective denials cause instability, create evidentiary problems and frustrate the timely resolution of claims.

In this case, the Court of Appeals concluded that EBI had retrospectively denied this claim, thereby violating the rule of *Bauman:*

> "At the time that EBI accepted the claim for Junction City Center, it had knowledge of the carpal tunnel syndrome and was on notice that claimant claimed that it related to her back injury. It does not assert any of the exceptions to the *Bauman* rule of fraud, misrepresentation or other illegal activity. *See Liberty Northwest Ins. Corp. v. Powers,* 76 Or App 377, 380, 708 P2d 1202 (1985). It could not, therefore, deny the compensability of the claim." 77 Or App at 5.

The Court of Appeals recently summarized its holding: "The scope of the acceptance is governed by the notice or knowledge that the employer has of the nature of claimant's condition at the time of its acceptance." *Destael v. Nicolai Co.,* 80 Or App 596, 601, 723 P2d 348 (1986). The reasoning of the Court of Appeals seems to be that once an insurer accepts a claim, it must accept any allegedly related conditions if the insurer knows or has notice of the other conditions when it accepts the original claim. Even though the insurer does not mention the other condition in its acceptance, it may not then deny the other condition without running afoul of the *Bauman* rule.

However, *Bauman* applies only to a claim "specifically" or "officially" accepted by the insurer. 295 Or at 793-94. ORS 656.262(6) requires that the insurer or self-insured employer furnish the claimant with "[w]ritten notice of acceptance or denial of the claim * * * within 60 days after the employer has notice or knowledge of the claim." An insurer must accept a particular claim in writing, and subsequently deny that particular claim after the 60 days prescribed by ORS 656.262(6) have elapsed, before *Bauman* applies.

The insurer's knowledge or notice of a condition is not a substitute for a specific written acceptance as defined by *Bauman.* By the same token, an insurer's silence regarding one aspect of a claim is neither acceptance nor denial of that aspect of the claim. Silence is neutral. One could argue that if

an insurer's silence regarding a condition implies anything, it would imply denial, not acceptance.

ORS 656.262(6) requires only that the insurer respond in writing to a claim within 60 days of its notice or knowledge of the claim; it does not convert the insurer's failure to respond specifically to a condition into acceptance of that condition. If an insurer specifically accepts in writing only one of several conditions or injuries encompassed by a single claim, the insurer has not "specifically" or "officially" accepted the other conditions allegedly related to the accepted part of the claim.

■    Here, EBI never specifically accepted claimant's carpal tunnel syndrome. As stated above, the claim form on which EBI accepted claimant's back and arm injury claim mentioned only the back and right arm injury. Although EBI received Dr. Tsai's report eight days before it accepted claimant's back and arm injury, we conclude that EBI's silence regarding claimant's carpal tunnel syndrome was not an acceptance of that disease.

■    However, our conclusion about the effect of EBI's failure to respond to claimant's carpal tunnel syndrome does not resolve this case. We agree with claimant and the Court of Appeals that the back and arm injury and the carpal tunnel syndrome are aspects of a single claim. EBI assigned one claim number to the back and arm injury and the carpal tunnel syndrome and treated the injury and the disease as aspects of a single claim in its denial letter to claimant. However, claimant's back and arm injury and her carpal tunnel syndrome, although aspects of one claim, are separate. While the Court of Appeals did not specifically conclude that claimant's back and arm injury was in fact related to the carpal tunnel syndrome in this case, in *Destael v. Nicolai Co., supra,* the Court of Appeals referred to this case, stating that "the scope of the acceptance of the back injury claim included the carpal tunnel syndrome, because employer had notice and knowledge that *it related* to the back injury." *Id.* at 601. (Emphasis added.)

The Court of Appeals read Dr. Tsai's report as relating claimant's carpal tunnel syndrome to her *injury* of September 5, 1982, thereby creating a single claim. However, the report shows that Dr. Tsai related both claimant's back injury

*and* her bilateral carpal tunnel syndrome to her *work* at Junction City Center. This is consistent with the opinion of Dr. Jewell.[5]

■     The reasoning of the Court of Appeals in this case would hinder the practice of "partial denials," in which an insurer denies one aspect of a claim while accepting another aspect of the same claim. In a partial denial, separate aspects of a single claim are treated as though they were separate claims. *See, e.g., Dean v. SAIF,* 72 Or App 16, 19, 695 P2d 90 (1985). Although no statute specifically authorizes partial denials, OAR 436-83-125 provides:

> "Every notice of partial denial shall set forth with particularity the injury or condition for which responsibility is denied and the factual and legal reasons therefor. The notice shall be in the form provided for in [OAR 436-]83-120. Hearing and appeal rights and procedures shall be as provided for claim denials in ORS 656.262(6) and (7), 656.319 and these Rules."

This court has recognized partial denials. *See Price v. SAIF,* 296 Or 311, 675 P2d 479 (1984); *Ohlig v. FMC Marine & Rail Equipment,* 291 Or 586, 596, 633 P2d 1279 (1981). Partial denials are litigated frequently at the Workers' Compensation Board. *See, e.g., Sidney M. Brooks,* 38 Van Natta 925, 926 (1986) ("SAIF's precautionary partial denial of carpal tunnel syndrome was appropriate to avoid the appearance of having accepted an unrelated condition because claimant's doctors were investigating it at the same time they were treating claimant's accepted low back strain injury."); *Leon E. Cowart,* 38 Van Natta 916, 918 (1986) (finding a partial denial proper and that "SAIF's silence regarding claimant's post-injury low back complaints * * * did not constitute an 'acceptance' of [a claim]").

In *Price v. SAIF, supra,* this court held that a claimant may appeal a partial denial. *Price* concerned a single claim that included a low back strain and a heart condition. Claimant appealed the Board's denial of the heart condition, contending that it was related to his accepted low back strain.

---

[5] Dr. Jewell testified that claimant's carpal tunnel syndrome arose from her work at Marloc and the condition could have been exacerbated by her work at Junction City Center. *Johnson v. Spectra Physics,* 77 Or App 1, 4, 712 P2d 125 (1985).

While the appeal was pending, the referee had not yet determined the extent of disability caused by the back injury. The Court of Appeals dismissed the appeal from the denial of the heart condition as premature. We reversed, holding that the denial was appealable: "An order which addresses two separate aspects of the same claim, extent of disability on the accepted claim and compensability for an allegedly related disease, infection or injury, may finally determine one issue but not the other." 296 Or at 316.

■      A partial denial is appropriate when, as here, two or more injuries or conditions are separate aspects of the same claim. Under OAR 436-83-125, when a claimant makes a single claim encompassing two separate injuries or conditions, the insurer then may partially deny that claim by specifically denying one injury or condition while accepting the other.

Partial denials are consistent with the rule of *Bauman* because they promote timely closure of the accepted aspects of the claim. In a proper partial denial under OAR 436-83-125, the insurer should inform the claimant of the reasons for the partial denial, allowing the claimant to appeal the partial denial promptly. Under *Price v. SAIF, supra,* the claimant may appeal the partial denial even if the accepted injury or condition is being processed. If insurers could not partially deny claims, they might routinely deny entire claims to protect their interests, rather than accepting conditions or injuries that are clearly compensable.

To summarize, an insurer's acceptance of a claim includes only those injuries or conditions specifically accepted in writing pursuant to ORS 656.262(6). An insurer's failure to respond to a claim or one aspect of a claim is neither acceptance nor denial. The insurer may partially deny a claim if it specifies which injuries or conditions it accepts and which it denies. That specificity, which promotes timely closure of accepted conditions and prompt appeals of denied conditions, is the essence of a partial denial.

Here, at first EBI failed to respond to notice of claimant's carpal tunnel syndrome after accepting claimant's back injury. Because we conclude that EBI never accepted claimant's carpal tunnel syndrome, we reverse that part of the opinion of the Court of Appeals which held that EBI violated the *Bauman* rule. EBI eventually denied the carpal tunnel

syndrome but this occurred more than 60 days after the claim was filed. ORS 656.262(6). EBI may be subject to penalties under ORS 656.262(10)[6] for not responding to the carpal tunnel syndrome claim within 60 days.

■     The Court of Appeals is affirmed in its conclusion that claimant's disease arose out of and in the scope of her employment at Marloc. The Court of Appeals is reversed in its conclusion that the subsequent denial of responsibility for the carpal tunnel syndrome by Junction City Center was unlawful. The case must be remanded for a determination of whether claimant's carpal tunnel syndrome is compensable as to Junction City Center, and determination of penalties, if any, against EBI for failing to respond to claimant's claim within 60 days. If it is determined that claimant's occupational disease is compensable as to both Marloc and Junction City Center, then a determination of the responsible party must be made. We remand, therefore, to the Court of Appeals for such further proceedings as it may order in accordance with this opinion. In so doing, we intend to leave to the Court of Appeals a decision whether to resolve finally the case or to remand to the Board.

---

[6] ORS 656.262(10) provides:

"If the insurer or self-insured employer unreasonably delays or unreasonably refuses to pay compensation, or unreasonably delays acceptance or denial of a claim, the insurer or self-insured employer shall be liable for an additional amount up to 25 percent of the amounts then due plus any attorney fees which may be assessed under ORS 656.382."

ORS 656.262(6) sets the 60-day acceptance or denial period from the date the employer has notice or knowledge of the claim. We conclude that the notice to the employer occurred not when the claim was filed but when EBI received Dr. Tsai's report. EBI received Dr. Tsai's letter on November 22, 1982, and did not deny claimant's carpal tunnel syndrome until February 10, 1983, 80 days later. On remand, determination should be made whether EBI's delay in responding to Dr. Tsai's report was unreasonable.