Argued and submitted October 7, 1987, reversed and remanded to Court of Appeals for further consideration February 17, petition for reconsideration allowed by opinion February 17, 1988
See 305 Or 468, 752 P2d 1210 (1988)

In the Matter of the Compensation of
Dawn White, Claimant.

## NORTH CLACKAMAS SCHOOL DIST.,
*Respondent on Review,*

*v.*

## WHITE,
*Petitioner on Review.*

(WCB 83-09151; CA A36411; SC S34192)

750 P2d 485

Donald E. Beer, of Galton, Popick & Scott, P.C., Portland, argued the cause for petitioner on review. Alan M. Scott, Portland, filed the petition for review.

Jerald P. Keene, of Roberts, Reinisch & Klor, P.C., Portland, argued the cause and filed a response to the petition for respondent on review.

PETERSON, C. J.

## PETERSON, C. J.

The question in this workers' compensation case is whether the claimant's assertion of a medical expenses claim and an aggravation claim are precluded by an earlier ruling of the Workers' Compensation Board (Board). The Court of Appeals held that the claims were precluded. *North Clackamas School Dist. v. White,* 85 Or App 560, 737 P2d 649 (1987). We hold that the claims are not precluded.

This case concerns rules commonly referred to as the rules of res judicata, long established in Oregon common law jurisprudence. The term "res judicata" has been used to refer to the preclusive effect on the *claim. See, e.g., Taylor v. Baker,* 279 Or 139, 144, 566 P2d 884 (1977); *Dean v. Exotic Veneers, Inc.,* 271 Or 188, 194, 531 P2d 266 (1975). The term "collateral estoppel" referred to the preclusive effect on *issues. See, e.g., Jones v. Flannigan,* 270 Or 121, 124, 526 P2d 543 (1974); *Gaul v. Tourtellotte,* 260 Or 14, 17, 488 P2d 416 (1971). The editors of the Restatement, in Restatement (Second) of Judgments (1980), now refer to the preclusive effect on the claim as "claim preclusion" and the preclusive effect on an issue as "issue preclusion." *See* Restatement (Second) of Judgments, Introduction at 1-5 (1980). Those terms better describe the rules for which they are shorthand. In this opinion we will use those terms as well. As do the editors, we will refer to the law of res judicata or to the rules of res judicata. These terms include both issue preclusion and claim preclusion.

In *State Farm Fire & Cas. v. Reuter,* 299 Or 155, 158, 700 P2d 236 (1985), we described the common-law doctrine as follows:

"If a person has had a full and fair opportunity to litigate a claim to final judgment, most courts (including this one) hold that the decision on a particular issue or determinative fact is determinative in a subsequent action between the parties on the same claim (direct estoppel). *See, e.g., Waxwing Cedar Products v. Koennecke,* 278 Or 603, 610, 564 P2d 1061, 1064-65 (1977); *Bahler v. Fletcher,* 257 Or 1, 4, 474 P2d 329, 331 (1970). The judgment generally is conclusive as well in a different action between parties as to issues actually litigated and determined in the prior action if their determination was essential to the judgment (collateral estoppel)."

Application of res judicata rules prevents harassment by successive proceedings and promotes economy of resources in the

adjudicatory process. *Dean v. Exotic Veneers, Inc., supra,* 271 Or at 192.

ORS 43.130[1] makes court judgments, decrees and final orders conclusive upon parties and their successors in interest. The statute is not applicable here because the statute requires the first proceeding to be "before a court or judge." The first proceeding ended at the Board, which is not a "court or judge."

This is the first time that we have been asked to determine whether res judicata is applicable where an administrative agency is faced with a second proceeding involving the same parties and, arguably, the same claim.[2] The Oregon

---

[1] ORS 43.130 provides:

"The effect of a judgment, decree or final order in an action, suit or proceeding before a court or judge of this state or of the United States, having jurisdiction is as follows:

"(1) * * * * *

"(2) In other cases, the judgment, decree or order is, in respect to the matter directly determined, conclusive between the parties, their representatives and their successors in interest by title subsequent to the commencement of the action, suit or proceeding, litigating for the same thing, under the same title and in the same capacity."

[2] In *State ex rel Huntington v. Sulmonetti,* 276 Or 967, 970, 557 P2d 641 (1976), we assumed that the doctrine was applicable in a workers' compensation case in which the issue involved the timeliness of filing a claim. *Bandy v. Norris, Beggs & Simpson,* 222 Or 1, 342 P2d 839, 351 P2d 445 (1959), held that a worker who applied for and received benefits under the workers' compensation law was precluded from maintaining an action for damages against his employer under the Employers' Liability Law. Justice Lusk, concurring, stated:

"But the question here is as to the effect of the award which the plaintiff sought and obtained from the Commission. While it is not *res judicata* in the technical sense, for the defendant was not a party to the proceeding before the Commission, it does, as I view it, have the force of a judgment for the purpose of the present case. It establishes the fact that plaintiff was the employee of an employer under the Workmen's Compensation Law, who was awarded compensation for an injury."

222 Or at 23-24.

In *State v. Ratliff,* 304 Or 254, 258, 744 P2d 247 (1987), the issue was "whether the doctrine applies when a defendant in a criminal case seeks to estop the state from litigating an issue based upon the decision of a hearings officer in [a Motor Vehicles Division] administrative proceeding." We stated:

"It is possible that some [administrative proceedings] may provide sufficiently formal and comprehensive procedures so that a decision in an administrative proceeding may have collateral estoppel effect in a subsequent judicial proceeding. However, the proceeding in this case is inadequate to justify the use of collateral estoppel."

*Id.*

Court of Appeals has recognized the doctrine in workers' compensation cases. *See, e.g., Million v. State Acc. Ins. Fund,* 45 Or App 1097, 610 P2d 285 (1980); *Reed v. Del Chem. Corp.,* 40 Or App 599, 595 P2d 1291 (1979); *Bowser v. Evans Prods. Co.,* 17 Or App 542, 522 P2d 1405 (1974).[3]

■   Although judge-made res judicata rules may not be applicable to all administrative proceedings, we should apply them where they facilitate prompt, orderly and fair problem resolution. Professor Davis states this view:

> "As a matter of principle, it is completely clear that the reasons behind the doctrine of res judicata as developed in the court system are fully applicable to *some* administrative proceedings. The reasons against a second litigation between the same parties of the same claims or issues are precisely the same for some administrative determinations as they are for most judicial determinations. The sound view is therefore to use the doctrine of res judicata when the reasons for it are present in full force, to modify it when modification is needed, and to reject it when the reasons against it outweigh those in its favor."

2 Davis, Administrative Law Treatise 548, § 18.02 (1958) (footnote omitted; emphasis in original).

The American Law Institute agrees. Section 83(1) of Restatement (Second) of Judgments states:

> "(1) Except as stated in Subsections (2), (3), and (4), a valid and final adjudicative determination by an administrative tribunal has the same effects [as in civil cases] under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court."

We see no reason why the rules of res judicata should not apply in this case. The same quality of proceedings and opportunity to litigate is present in both proceedings. If the incentive to litigate the question is substantially the same, the procedural requisites for application of the issue preclusion rule would appear to exist. *See* Restatement (Second) of Judgments, Introductory Note to Ch 6 at 265 (1980). The forum —the Board—is the same in both cases. Therefore, we need

---

[3] Many other courts have applied the doctrine in workers' compensation cases. *See* 3 Larson, Workmen's Compensation Law § 79.72(a) & n 26 (1983), and cases cited therein.

not further consider the relative competence and responsibility of the two forums.

■ The case before us involves issue preclusion, not claim preclusion.[4] The rule of issue preclusion, derived from our earlier decisions, is as stated in *State Farm Fire & Cas. v. Reuter, supra:* If a claim is litigated to final judgment, the decision on a particular issue or determinative fact is conclusive in a later or different action between the same parties if the determination was essential to the judgment. 299 Or at 158.

We turn then to an examination of the issues decided by the Board in the first hearing. The claimant sustained an injury to her hips on October 26, 1981, when she slipped on some steps at work. She asserted a claim. The employer's insurer paid medical benefits. Her claim was closed by determination order with an award of time-loss benefits on April 9, 1982. The claimant challenged the award, arguing that her claim was prematurely closed or, in the alternative, that she was entitled to permanent partial disability compensation. On June 15, 1982, a referee affirmed the closure and rejected the claim for permanent partial disability. With respect to the issue of premature closure, the referee not only concluded that the claimant was medically stationary but went on to state:

"The relationship of claimant's current disability to her industrial injury is a medical question, and claimant has not sustained her burden of showing a medical connection between her present condition and her industrial injury. I therefore find that her claim was properly closed and she is not entitled to have her claim reopened."

With respect to her claim of entitlement to permanent partial disability, the referee found that the claimant did not sustain "her burden of proving that she has lost any earning capacity as a result of her industrial injury."

The Board affirmed and adopted the referee's opinion and order "subject to one comment":

"The referee stated that 'One of Dr. Torres' main concerns seems to be claimant's fatty nodules, which he said are not

---

[4] On claim preclusion and issue preclusion, see Restatement (Second) of Judgments, sections 17-29 (1980).

related to claimant's bilateral hip discomfort.' A more accurate assessment of Dr. Torres' opinion is that he is unable to determine to what extent the nodules are related to the hip discomfort and the industrial injury. *This clarification is important in the context of this case because claimant's pain has continued since the injury but the etiology of the continuing pain problem has yet to be diagnosed.*" (Emphasis added.)

No appeal was taken from the Board's decision. The employer's insurer continued to pay medical benefits for over a year after the hearing before the referee. On July 23, 1983, after receiving additional medical information, the insurer issued a partial denial for medical conditions diagnosed as sacroiliitis, fibrositis, chronic back pain and bilateral hip girdle pain.

The claimant requested a hearing on the partial denial and further alleged that her injury had worsened. The referee upheld the partial denial with respect to the sacroiliitis, fibrositis and the chronic back pain; however, the referee directed the insurer to continue to pay for medical care and treatment of the claimant's ongoing hip girdle pain. The referee dismissed the claimant's aggravation claim because she had failed to show that the hip girdle condition had worsened since the last award or arrangement of compensation.

The Board affirmed, adopting the referee's opinion and order as its own. The insurer appealed, arguing that the doctrine of res judicata barred the claim and that "the Referee and the Board necessarily relitigated and inconsistently decided medical issues of causation previously determined in a final, litigated order."

In order to determine whether res judicata applies, we must first examine in greater detail what was decided in the first adjudication. The claims asserted and the Board's first decision in the 1982 injury were these:

| *Claim* | *Disposition* |
| --- | --- |
| For medical expenses for hip injury | Not in controversy. The medical expenses were being paid.[5] |

---

[5] ORS 656.262(9) provides that "[m]erely paying or providing compensation shall not be considered acceptance of a claim * * *." ORS 656.262(6) requires that the insurer or self-insured employer furnish a claimant with "[w]ritten notice of accep-

| For premature closure | Denied. Board held that the claim was properly closed. |
| For permanent partial disability arising from injury | Denied. The Board stated that although "claimant's pain has continued since the injury, * * * the etiology of the continuing pain problem has yet to be diagnosed." |

After the first Board ruling the claimant continued to receive medical treatment and the employer continued to pay medical bills until July 23, 1983, when it issued a denial letter reading in part as follows:

"A review of medical information obtained from Kip Kemple, M.D. and Kaiser Permanente reveals your disability is not related to your employment at North Clackamas School District No. 12 or the October 26, 1981 on-the-job injury. The medical condition for which we are partially denying has been diagnosed as sacroiliitis, fibrositis, chronic back pain and bilateral hip girdle pain. This partial denial is based on the fact it does not appear your condition was worsened by or arose out of and in the course of your employment, either by accident or occupational disease within the meaning of the Oregon workers' compensation law."

The claimant requested a hearing on the denial and claimed "an aggravation of her condition."

The Board in part upheld the denial. The Board adopted the opinion of the referee, which contains this finding:

"I conclude that the medical evidence does not support the employer/adjuster's denial of responsibility for claimant's bilateral hip girdle pain and reverse the denial in that respect. However, I also conclude that the medical evidence does support the employer/adjuster's denial of responsibility for

---

tance or denial * * * within 60 days after the employer has notice or knowledge of the claim." In this case, although the medical expenses were paid, the record contains no evidence of acceptance of the claim by the employer's insurer. Because the employer's insurer did not "specifically accept" the claimant's claim in writing, the rule against "back-up denials" stated in *Bauman v. SAIF*, 295 Or 788, 670 P2d 1027 (1983), is not implicated in this case. *Johnson v. Spectra Physics*, 303 Or 49, 55-56, 58, 733 P2d 1367 (1987). The employer's insurer, may, however, be subject to penalties under ORS 656.262(10) for not specifically responding to the claim within 60 days. *See id.* at 58-59.

claimant's sacroiliitis, fibrositis and chronic back conditions."

Both the referee and the Board denied the worsening claim on the facts, but refused to hold that all future claims for aggravation were barred. The referee stated:

"I do not, however, agree with the employer/adjuster that claimant's aggravation claim is barred by the prior litigation Orders. It is at least theoretically possible for a person with an accepted, initially non-disabling work injury condition to subsequently experience a compensable worsening of that condition. Since the prior litigation did not deal with the issue of aggravation or worsening, that litigation does not bar a subsequent claim by claimant for aggravation."

In holding that the Board's first decision barred the assertion of the worsening claim, the Court of Appeals stated:

"We do not agree with claimant's assertion that issues raised by her present claim are significantly different from those previously litigated. More than five months after the industrial accident a referee found that her then existing hip condition was unrelated to her initial compensable injury. That determination was affirmed by the Board and never appealed. The present case is unlike our decision in *Kepford v. Weyerhaeuser Co.,* 77 Or App 363, 713 P2d 625, *rev den* 300 Or 722 (1986), where the claimant offered a previously unlitigated theory. Here, the record contains no objective evidence distinguishing claimant's current hip condition from the hip malady which she had asserted in her original disability hearing. *Because entitlement to medical treatment and disability benefits result from work-related injuries, the underlying causation issues are essentially identical. The compensability of claimant's hip condition has already been determined.*"

85 Or App at 564 (emphasis added).

We disagree. No questions relating to the claimant's right to medical benefits were decided in the first hearing. Only two issues—premature closure and entitlement to permanent partial disability—were there involved. On the latter question, the Board found that the claimant had established no then-present permanent partial disability caused by the hip injury. The employer's insurer had never denied that the claimant had sustained an injury to the hip and there was no finding that the claimant had not sustained a hip injury.

■ As stated, the insurer continued to pay medical benefits until its partial denial letter of July 23, 1983. True, a carrier or employer can, at any time, deny, in whole or in part, claims for medical expenses or disability on the ground that they are unrelated to the injury claim theretofore accepted. *See Johnson v. Spectra Physics,* 303 Or 49, 58, 733 P2d 1367 (1987). But the Court of Appeals erred in holding that the partial denial was correct because of the preclusive effect of the Board's first adjudication. The referee's comments on this point are apposite, and we agree with them:

> "The employer/adjuster makes a very tempting argument that it is absolved of future responsibility by the doctrine of res judicata. That is to say, it argues that since the issue of extent of permanent disability has been litigated and has led to a finding that claimant had no permanent residuals as a result of her work injury her compensable condition must therefore have completely resolved prior to the time of the last hearing. Having completely resolved, counsel goes on to argue, any problems claimant now has cannot be related to her industrial injury.

> "Though the argument is tempting, to accept it would, in effect, cut off all of claimant's future rights for medical care and treatment under ORS 656.245 and for aggravation under ORS 656.273, a result neither contemplated by the Legislature nor allowed by the Workers' Compensation Act."

The Court of Appeals' opinion seems to say that as a matter of law *all* of the claimant's claims, including the claim for medical expenses and worsening, are barred under the rules of res judicata. The finding of no permanent partial disability at the first decision does not bar all claims for aggravation under rules of res judicata. We read the first Board decision to find a hip injury, but no then present permanent partial disability. If the later aggravation claim is uncompensable, it is uncompensable because, as a matter of fact, there was no worsening when comparing the later hip condition with the earlier hip condition. This was the finding of the referee and the Board without the application of rules of res judicata.

Though we agree with the Court of Appeals that a claimant "cannot use an aggravation claim as a back door to relitigate underlying causation issues," 85 Or App at 563-64, that is not the case here. The finding of no permanent partial

disability at the first hearing did not bar the assertion of all later aggravation claims as a matter of law.

The decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals to decide, as a matter of fact, whether the claimant's hip condition has worsened and whether the insurer's denial of the need for further medical care and treatment was proper.[6]

---

[6] The claimant cross-petitioned in the Court of Appeals for judicial review of the Board's denial of compensation for her back pain. The Court of Appeals found that "her present back condition is the product of a preexisting condition which was not caused or affected by the industrial accident." *North Clackamas School Dist. v. White*, 85 Or App 560, 564 n 2, 737 P2d 649 (1987). That issue is out of the case and should not further be considered.