In the Matter of the Compensation of
Jacqueline D. Hanes, Claimant.

Jacqueline D. HANES,
*Petitioner,*

*v.*

WASHINGTON COUNTY
COMMUNITY ACTION
and SAIF Corporation,
*Respondents.*

(88-11146; CA A64484)

812 P2d 424

Ronald A. Fontana, Portland, argued the cause and filed the brief for petitioner.

David L. Runner, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

**DEITS, J.**

Claimant seeks review of a Workers' Compensation Board order holding that her compensable injuries are non-disabling. In an earlier, unappealed order, a referee stated that her injuries were "compensable and disabling." Claimant argues that the Board was precluded from later deciding that she is not disabled. She also contends that there was not substantial evidence to support the Board's decision that she was not disabled. We affirm.

Claimant was employed by Washington County Community Action Agency from 1978 until 1986. She started as a secretary and eventually was promoted to program director. Because she had difficulty dealing with her increased responsibilities, she voluntarily took a demotion to the position of lead counselor in August, 1985. She continued to have difficulties on the job and with her supervisor. She was terminated in January, 1986, and obtained unemployment benefits. Describing her reaction to the termination, she testified:

> "I was more scared than anything, and I think I was really in a state of shock, and—I don't know. I didn't think about whether I could work or not work. I—you know—I'm a single parent, and I have children, and I know they needed to be taken care of and I was—you know—panicky."

From April, 1985, through 1987, claimant obtained counseling from her ministers, one of whom had a master's degree in counseling psychology. They encouraged her to consult other mental health practitioners, but she did not do so. In early 1986, she sought medical treatment for skin rash, bloody stools, diarrhea, gastrointestinal upset and spasm, chest and extremity pain and numbness. Her doctor diagnosed reflux esophagitis and depression and concluded that stress could have exacerbated her physical conditions. Claimant testified that her physical symptoms were continuing at the time of the hearings. After her termination by employer, she had applied for about 200 jobs. She obtained a position at a restitution center in mid-1986 but was fired after one month. She was hired to work 32 hours per week at a senior center in February, 1988, and resigned seven months later. She also worked cleaning houses.

Claimant filed this occupational disease claim on June 19, 1987. SAIF denied the claim, and she appealed. At SAIF's request, she was given an independent psychiatric exam by Dr. Turco, whose report diagnosed her as having "adjustment reaction, with what appears to be elements of fatigue." In a deposition that was made part of the record, he stated that claimant had suffered from emotional distress in 1985 and 1986, that it may have been disabling and that some of her distress related to her working conditions. In an order issued on April 20, 1988, the referee set aside SAIF's denial:

> "Claimant has met her burden of proving that she suffered from a mental disorder which was disabling, that there were stressful conditions on her job and that those stressful job conditions and events were the major contributing cause of her mental disorder."

SAIF did not appeal that order; instead, it accepted the claim as compensable and nondisabling. It then requested a determination order, which was issued on June 13, 1988, and awarded no temporary or permanent disability. Claimant had a hearing on the determination order, and the referee set it aside. He concluded that claimant was disabled and awarded her temporary total disability and temporary partial disability benefits. SAIF appealed that order. The Board held that claimant was not disabled and reinstated the determination order. Claimant seeks review of the Board's decision.

■　Claimant contends that the referee's finding of disability in the first order precludes the Board from deciding now that her condition was nondisabling. We hold that employer was not precluded from seeking a determination on the extent of disability after the first referee's order.

Issue preclusion is defined in *Drews v. EBI Companies,* 310 Or 134, 139, 795 P2d 531 (1990):

> "The issue preclusion branch of preclusion by former adjudication, formerly called collateral estoppel, precludes future litigation on a subject issue only if the issue was 'actually litigated and determined' in a setting where 'its determination was essential to' the final decision reached. *North Clackamas School Dist. v. White,* 305 Or 48, 53, 750 P2d 485, *modified* 305 Or 468, 752 P2d 1210 (1988); Restatement (Second) of Judgments § 17(3) (1982); *see also id.* at § 27."

The purpose of the first referee's finding of disability was to support the initial determination that the condition was compensable. The extent of disability, if any, had not yet been fully litigated. To determine whether claimant's mental disorder was compensable, the referee needed to determine whether it arose out of and in the course of her employment and whether it had required medical services or was disabling. ORS 656.802(1). Because employer had denied the claim as noncompensable, it had not yet had an opportunity to assert whether the condition, if found to be compensable, was disabling[1] or to litigate the extent of disability. The first referee's order simply set aside the initial denial of compensability and remanded the case for processing, which would include the determination of the extent of disability.

■     Claimant also contends that the Board's finding that she is not disabled is not supported by substantial evidence. She points to Turco's testimony as sufficient evidence that she was disabled. However, the issue on review is whether a reasonable person could conclude that claimant's condition was not disabling. *See Armstrong v. Asten-Hill Co.,* 90 Or App 200, 206, 752 P2d 312 (1988). Although Turco testified that he believed that she was disabled, the record includes other evidence that supports the Board's conclusion that her compensable condition is not disabling. The Board found:

> "No time loss was authorized by any physician. Claimant's family physician, Dr. Glasser, did not treat claimant for her employment related stress and authorized no time loss. Furthermore, the only psychiatric evidence in the record is that of Dr. Turco. Dr. Turco concluded that claimant was psychiatrically stationary and capable of working on a regular full-time basis. Dr. Turco found that while claimant could have possibly been disabled from her job with SAIF's insured he could not determine when she would have been capable of returning to regular work. His suggestion that claimant was disabled from work at the time she was terminated is primarily based on information obtained through claimant's statements that she could not perform the job when terminated and for some time thereafter. The remainder of this record,

---

[1] ORS 656.262(6)(a) requires an employer to provide written notice of acceptance or denial within 60 days after it has notice or knowledge of a claim and, if the claim is accepted, to give notice of whether the injury is considered disabling or nondisabling. If a claim is denied, the employer is not required to advise the claimant whether it considers the claim to be for a disabling or nondisabling injury.

which includes other employments as well as receipt of unemployment benefits, does not support claimant's statements that she was continuously disabled during this period of time even on a partial basis."

We conclude that there is substantial evidence in the record to support the Board's findings.

Affirmed.