Argued and submitted June 3, 1991, affirmed April 22, 1992

In the Matter of the Compensation of
Ronald W. Davis, Claimant.

Ronald W. DAVIS,
*Petitioner,*

*v.*

R & R TRUCK BROKERS;
Ohio Casualty; Robert Buker,
dba Bob Buker Trucking;
Roberts Automatic Fire Sprinklers, Inc.;
and SAIF Corporation,
*Respondents.*

(83-08268, 83-07641, 83-07640; CA A65696)

829 P2d 732

Brad G. Garber, Salem, argued the cause and filed the brief for petitioner. With him on the brief was Law Office of Michael B. Dye, Salem.

Jerry K. Brown, McMinnville, argued the cause for respondents R & R Truck Brokers and Ohio Casualty. With him on the brief was Cummins, Brown, Goodman, Fish & Peterson, P.C., McMinnville.

Ann Kelley, Assistant Attorney General, Salem, argued the cause for respondents Roberts Automatic Fire Sprinklers, Inc., and SAIF Corporation. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

No appearance for Robert Buker, dba Bob Buker Trucking.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

DEITS, J.

* Joseph, C. J., *vice* Newman, J., deceased.

## DEITS, J.

Claimant seeks review of an order of the Workers' Compensation Board, contending that the Board erred in upholding a denial of compensability by SAIF on behalf of Bob Buker Trucking (Buker Trucking) and in concluding that claimant was acting outside the course and scope of his employment at the time that he was injured. We affirm.

Claimant was injured in June, 1983, when the truck that he was driving for Buker Trucking left the road and flipped over. Buker Trucking had arranged for claimant to drive its truck on June 14, 1983, from a roofing company in Portland to Woodinville, Washington. Robert Buker (Buker), owner of the trucking company, instructed claimant to return the truck to Buker's home in Turner, Oregon, the same day. However, claimant telephoned him from Washington and told him that he could not return that day. Claimant delivered the load in Woodinville on June 15. Although Buker had not authorized him to do it, claimant then arranged through two truck brokers, R & R Truck Brokers (R & R) and Horizon Truck Brokers (Horizon), to pick up additional loads on the way back to Oregon. R & R asked him to pick up a load at Roberts Automatic Fire Sprinklers (Roberts) in Vancouver, Washington, on June 16, for transportation to Grants Pass. R & R called Buker for approval, and Buker agreed.

Claimant was to pick up the Horizon load in Tacoma on June 16, but Buker was not asked to approve that load. Claimant did not appear at the scheduled time on the morning of June 16 to pick up the Horizon load. Horizon had wired claimant expense money, which he had picked up. Horizon immediately called Buker to find out why claimant had not picked up his load. Buker contacted R & R and asked them to tell claimant, when he contacted them, not to finish the trip but to return the truck directly to Buker's yard in Turner. Claimant did pick up the load for Roberts in Vancouver. At that time, he called R & R and was told that Buker wanted him to return immediately to Turner.

Claimant was not authorized to go further south than Turner. However, he continued on his trip to Grants Pass. He picked up his friend, Evans, in Portland, and his son and ex-wife in Turner at a place within a mile of Buker's

home. Claimant did not stop there or try to contact Buker, who had another driver waiting to complete the trip to Grants Pass. Claimant and his passengers continued south on I-5 to Canyonville, where they stopped for dinner. Claimant drank a small amount of alcohol. North of Grants Pass, the truck left the road and flipped over. Evans was killed. Claimant was taken to the hospital and treated for injuries to his chest, lower left leg, face and left shoulder. He was later cited by the police for a log book violation, defective brakes and consuming alcohol within a designated period before operating a truck.

On June 28, 1983, claimant filed a report of an occupational injury or disease with the Workers' Compensation Department (WCD). The claim was forwarded to SAIF as the processing agent for Buker Trucking, because it was a non-complying employer. SAIF was instructed to deny the claim on the ground that claimant was not a subject employee of Buker Trucking. WCD also forwarded the claim to SAIF for processing on behalf of its insured, Roberts.

SAIF sent two letters to claimant, one on behalf of Buker Trucking *and* one on behalf of Roberts. Both stated:

> "We are unable to accept responsibility under this employer as you were not a subject employee * * * on the date of your injury. *Therefore, without waiving other questions of compensability, this formal denial is made.*" (Emphasis supplied.)

On the same day, SAIF, *on behalf of Roberts only*, asked WCD to issue an order pursuant to ORS 656.307. SAIF also noted that R & R and its insurer, Ohio Casualty, might be responsible for claimant's injury. The letter to WCD stated, in part:

> "[W]e feel that our insured, Wes Roberts Automatic fire Sprinklers, may not be responsible for this injury. Ohio Casualty Insurance Company, in behalf of their insured, R and R Truck Brokers, Incorporated may be legally responsible. Therefore, while compensability is not an issue, responsibility is and we request that you designate a paying agent pursuant to ORS 656.307."

SAIF then forwarded the claim to Ohio Casualty, which denied responsibility for claimant's injury by letter stating that the claim was SAIF's responsibility.

One week later, a ".307 order" was issued. It stated that compensability was not an issue, referred the matter for hearing on the responsibility issue and designated SAIF as the paying agent. The order provides, in part:

"SAIF Corporation has requested designation of a paying agent. * * * Although there is no dispute his injury is industrially related, it is unclear who his true employer was at time of injury. There are three possible employers: Bob Buker Trucking, uninsured at the time of accident. * * * The second possible employer is R & R Truck Brokers insured by Ohio Casualty. The other is Roberts Automatic Fire Sprinklers insured by SAIF * * *. All three claims have been denied for responsibility not compensability."

At the hearing, Buker, on his company's behalf, SAIF, on behalf of Roberts, and Ohio Casualty, on behalf of R & R, all denied compensability of claimant's injury. The referee concluded that SAIF was barred from denying compensability and that Buker was "bound by SAIF's actions," because he was a noncomplying employer. The Board, however, reversed the referee and held that neither Buker nor SAIF, on behalf of Buker, had conceded compensability and that they could contest it at the hearing. The Board also held that claimant had suffered a non-compensable injury, because he had acted outside the course and scope of his employment in taking the truck past Turner.

■       Claimant first argues that the Board erred in concluding that SAIF is not barred from litigating compensability. He argues that, by requesting designation of a paying agent pursuant to ORS 656.307 and by not denying compensability after the issuance of the .307 order, SAIF conceded compensability and, under *Bauman v. SAIF*, 295 Or 788, 670 P2d 1027 (1983), is precluded from arguing otherwise.

We conclude that the Board did not err in reversing the referee's order and in allowing Buker and SAIF to litigate compensability. The Board said: "We do not find that either Buker or his processing agent, SAIF, accepted the compensability of claimant's claim prior to issuance of an order pursuant to ORS 656.307." It reasoned that

"[t]he contention that claimant was not a subject employee of Buker at the time of injury arguably raises an issue of compensability, not only responsibility, because it challenges

claimant's entitlement to compensation. *See* ORS 656.005(8). Furthermore, the denial letter expressly declines to waive further questions of compensability.

"* * * * *

"Here, SAIF had never expressly conceded compensability on Buker's behalf. Hence, the .307 order was invalid, and we decline to treat it as a formal acceptance of compensability by Buker or his agent SAIF. Absent specific acceptance of the compensability of claimant's claim, *Bauman v. SAIF* * * * does not apply to preclude Buker or his agent SAIF from denying compensability."

The Board's holding is supported by substantial evidence in the record and is legally correct. In the letter that SAIF sent claimant on behalf of Buker Trucking, it specifically reserved the question of compensability. The request for the .307 order was only on behalf of Roberts. There is no evidence that SAIF ever expressly conceded compensability on behalf of Buker Trucking. Consequently, as the Board correctly concluded, the .307 order was invalid because not all the parties had agreed that the claim was compensable, as required by ORS 656.307.

■ Claimant argues that, even if SAIF did not concede compensability on behalf of Buker Trucking, it failed to deny compensability within 60 days, as required by ORS 656.262(6), and may not now do so. Although an employer's failure to accept or deny a claim in a timely manner may result in penalties or attorney fees, it does not result in an acceptance of a claim. An acceptance must be specific, if it is to bar an employer from denying a claim. As we said in *Richmond v. SAIF*, 85 Or App 444, 448, 737 P2d 135, *on reconsideration* 87 Or App 401, 742 P2d 677, *rev den* 304 Or 547 (1987), "failure to deny a claim within the time limitation does not preclude a subsequent denial." *See Johnson v. Spectra Physics*, 303 Or 49, 55, 733 P2d 1367 (1987).

■ Claimant contends that the Board erred in concluding that he went outside the course and scope of his employment by taking the truck toward Grants Pass. He contends that that conclusion is wrong, because he was never told that he was supposed to return the truck to Turner. However, the Board found that he was told to return the truck, and that finding is supported by substantial evidence. Buker testified

that he told an employee of R & R to ask claimant to return to Turner and that that person later called him back and said that he had passed the message on to claimant.

Claimant also argues that, even if the message did get through to him, his action merely constituted a violation of the employer's rules, which does not take the activity outside the course and scope of his employment. The test for determining whether an employee's activities are outside the course and scope is stated by Larson:

"When misconduct involves a prohibited overstepping of the boundaries defining the *ultimate work* to be done by the claimant, the prohibited act is outside the course of employment. But when misconduct involves a violation of regulations or prohibitions relating to *method* of accomplishing that ultimate work, the act remains within the course of employment." 1A Larson, *Workmen's Compensation Law* 6-10, § 31.00 (1990). (Emphasis in original.)

Claimant's misconduct in this case was more than a violation of a regulation or prohibition relating to the method of accomplishing his work. He was specifically told to return the truck and to stop working. Instead, he refused to do either and continued on toward Grants Pass, contrary to his job responsibilities. Claimant overstepped the boundaries of the work that he was to do for employer. There was substantial evidence to support the Board's finding that claimant's injury occurred outside the course and scope of his employment.

Affirmed.