Argued and submitted April 22, remanded for reconsideration on petition; affirmed on cross-petition October 16, 1996, petition for review denied January 14, 1997
(324 Or 513)

In the Matter of the Compensation of
Wonder Windom-Hall, Claimant.

NORDSTROM, INC.,
*Petitioner - Cross-Respondent,*

*v.*

Wonder WINDOM-HALL,
*Respondent - Cross-Petitioner.*

(WCB 90-06799; CA A89067)

925 P2d 144

Armstrong, J., filed opinion concurring in part and dissenting in part.

Karen O'Kasey argued the cause for petitioner - cross-respondent. With her on the briefs were Mildred J. Carmack and Schwabe, Williamson & Wyatt.

Karen Stolzberg argued the cause for respondent - cross-petitioner. With her on the brief was Goldberg, Mechanic & Stuart.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

WARREN, P. J.

Armstrong, J., concurring in part and dissenting in part.

## WARREN, P. J.

Claimant suffers from a number of conditions, including several vestibular disorders, encephalopathy and dysthymia, all of which she asserts are compensable because they resulted from her exposure to toxic or noxious fumes at her place of employment. Employer seeks review of an order of the Workers' Compensation Board upholding the compensability of one of the vestibular disorders, perilymph fistulas. Claimant cross-petitions, contending that the Board erred in determining that her other conditions are not compensable and in denying claimant attorney fees and penalties.

Claimant's claim form described her injury as headache, nausea and dizziness. On employer's portion of the form, it accepted a claim for "[p]rolonged exposure to fumes from roofing—caused dizziness and headaches." There was evidence that claimant's symptoms are the symptoms of the three vestibular disorders from which she suffers, each of which employer subsequently denied. Claimant sought a determination that employer's acceptance encompassed the three vestibular disorders. The Board concluded that claimant was correct, relying on *Georgia-Pacific v. Piwowar*, 305 Or 494, 753 P2d 948 (1988). Accordingly, the Board concluded that employer's subsequent denial of the vestibular disorders was a back-up denial.

Contrary to the Board's view, we think that employer's acceptance of the claim was qualified, as a matter of law, 305 Or at 501, and was limited to those symptoms caused by prolonged exposure to fumes from roofing. Conditions not caused by that exposure were not encompassed by the acceptance.

Because the Board believed that employer had accepted the vestibular disorders it treated employer's denial of the disorders as a back-up denial, and it determined, pursuant to ORS 656.262, that employer had the burden to show, by clear and convincing evidence, that the vestibular disorders were not compensable.[1] It found, with respect to

---

[1] We note that in 1995 the legislature amended ORS 656.262, which governs back-up denials, to change the employer's burden of proof to a preponderance of the evidence.

each vestibular disorder, that claimant's exposure to *toxins* at work did not cause them and with reference to two of the vestibular disorders that claimant's exposure to noxious odors did not cause them. The Board's findings are supported by substantial evidence. Although, in determining that two of claimant's vestibular disorders are not compensable, the Board incorrectly assigned the burden of proof to employer, because substantial evidence supports the Board's findings it would serve no purpose to remand the case to the Board for reconsideration under the correct burden of proof, which is more onerous to claimant. Accordingly, we affirm the Board with respect to the compensability of claimant's vestibular disorders other than perilymph fistulas.

■ The Board found additionally that employer had not carried its burden to show that claimant's perilymph fistulas[2] were not caused by her nausea and vomiting, which in turn had been caused by her exposure to *noxious* odors at work. Thus, it held that the perilymph fistulas remained an accepted condition. Because we have held that claimant's perilymph fistulas were never accepted, it remains claimant's burden to show that the condition was work related. There is no evidence that the perilymph fistulas were directly caused by the exposure to noxious fumes. There is some evidence they may have been caused by claimant's coughing or vomiting. If that is the case, then the condition may be compensable as a consequential condition. ORS 656.005(7)(A)(a). With respect to the perilymph fistulas, we therefore remand the case to the Board for it to consider in the first instance on this record whether claimant has met her burden to show that the perilymph fistulas are a consequential condition.

---

[2] A "fistula" is

"[a]n abnormal duct or passage resulting from injury, disease, or a congenital disorder that connects an abscess, a cavity, or a hollow organ to the body surface or to another hollow organ."

*The American Heritage Dictionary of the English Language* (3rd ed 1992).

The inner ear is divided into three different compartments that are separated by membranes and filled with fluid. A perilymph fistula is a leakage of fluid from one of the outer two membranes' fluid compartments, typically caused by trauma to the membrane, that allows fluid to pass between the inner ear and the middle ear.

■     In her cross-petition, claimant contends that the Board erred in holding that her encephalopathy and dysthymia are not compensable.[3] The Board found that claimant had failed to show that she was exposed to a sufficient level of toxins at work to have caused those conditions. Those findings are supported by substantial evidence. Accordingly, we affirm the Board with respect to its affirmance of the denial of the compensability of encephalopathy and dysthymia. In view of our determinations, we do not address claimant's remaining contentions with regard to attorney fees and penalties.

On petition, remanded for reconsideration; affirmed on cross-petition.

**ARMSTRONG, J.,** concurring in part and dissenting in part.

The majority holds that, as a matter of law, employer's acceptance of claimant's symptoms is limited to those symptoms caused by "[p]rolonged exposure to fumes at work." Consequently, it concludes that employer's subsequent denial of claimant's vestibular disorders was not a backup denial controlled by ORS 656.262(6)(a), but a denial of a new claim. The majority reaches that result by failing to apply *Georgia-Pacific v. Piwowar*, 305 Or 494, 753 P2d 948 (1988). I dissent from that holding.

Under *Piwowar*, if an employer accepts a claim that only describes symptoms, it accepts all conditions that caused those symptoms, even if those conditions are not work related. *Piwowar*'s holding resulted from an analysis of two earlier workers' compensation cases: *Bauman v. SAIF*, 295 Or 788, 670 P2d 1027 (1983), and *Johnson v. Spectra Physics*, 303 Or 49, 733 P2d 1367 (1987).

In *Bauman*, the court held that, once an employer accepts a claim, it cannot subsequently deny it without "a showing of fraud, misrepresentation or other illegal activity." *Id.* at 794. The court reasoned that allowing the employer to deny a previously accepted claim "would encourage degrees of instability in the workers' compensation system that we do

---

[3] Those two conditions were not subject to the alleged back-up denial.

not believe the statute contemplates." *Id.* at 793. Further, the potential for delayed litigation would frustrate the statutory scheme's provision for a "speedy resolution of workers' compensation claims." *Id.* at 794.

In *Johnson*, the employer accepted a claim for a "back injury" located in the "middle back and arm." 303 Or at 52. The employer subsequently denied the claimant's carpel tunnel syndrome, a wrist affliction. The court upheld the denial, concluding that the *Bauman* standard "applies only to a claim 'specifically' or 'officially' accepted by the insurer." *Id.* at 55. Allowing the insurer to accept one condition and deny another, the court concluded, was "consistent with the rule of *Bauman* because [it promoted] timely closure of the accepted aspects of the claim." *Id.* at 58.

In *Piwowar* the court stated:

"[r]ead together, *Johnson* and *Bauman* require the employer to compensate the claimant for the specific condition in the notice of acceptance regardless of the cause of that condition."

305 Or at 501. It followed that allowing the employer to accept symptoms and then subsequently deny conditions would subvert the principles of *Bauman* and *Johnson*. The employer would be free to "litigate compensability in any case in which the accepted condition may be attributed to a more specific cause." *Id.* Therefore, the court concluded that, when the employer in *Piwowar* accepted a claim for a sore back, it had accepted all conditions that caused that symptom, whether or not the conditions were caused by work. *Id.* at 501-02.

Following *Bauman, Johnson* and *Piwowar*, this court has distinguished a partial denial from a backup denial by determining whether the employer's acceptance encompassed "symptoms" or "conditions." In conducting that analysis, we have recognized the difficult line an employer must walk: if it accepts symptoms, it has to cover all conditions that caused the symptoms, even those not related to work; but if it refuses to take action until it gets a clear diagnosis of the conditions causing the symptoms, it will very likely be subject to penalties. *Reynolds Metals v. Mendenhall*, 133 Or

App 428, 434, 891 P2d 706 (1995) (citing *Weyerhaeuser Co. v. Warrilow*, 96 Or App 34, 36-38, 771 P2d 295, *rev den* 308 Or 184 (1989)). As a result, subsequent cases have suggested that if an employer identifies a condition, any condition, it will escape the rigors of *Piwowar. See, e.g.*, *Reynolds Metals*, 133 Or App at 430 (claimant claimed a lower back injury, stating he had a "possible ruptured disc"; employer accepted claim for "low back strain," although claimant had not been diagnosed with that condition; court held only claim for "low back strain" accepted); *SAIF v. Abbott*, 107 Or App 53, 55, 810 P2d 878 (1991) (if employer accepted a claim for "numbness in hands, arm aches," then it had to cover a claim for carpel tunnel syndrome; if it accepted a claim for "right wrist strain," and "right shoulder strain," then it did not have to cover carpel tunnel syndrome); *Boise Cascade Corp. v. Katzenbach*, 104 Or App 732, 802 P2d 709 (1990) (acceptance of "right wrist strain" does not cover avascular necrosis), *rev den* 311 Or 261 (1991).

Until today, however, the court has not allowed the employer to avoid the consequences of *Piwowar* by identifying a work-related "cause" of the accepted symptoms, as opposed to identifying an underlying physical "condition." The distinction between those two terms is significant. If the employer accepts a condition, the claimant knows with certainty what the employer will cover. The employer does not have unlimited discretion to deny future claims relating to that condition, which can lead to delay and instability. On the other hand, if the employer identifies only a work-related "cause" of the symptoms, it really accepts nothing. As each condition becomes known, the employer can dispute whether the condition is related to the "cause" it accepted.

At least one case, in *dictum*, has recognized that reality. In *Weyerhaeuser Co. v. Warrilow*, 96 Or App 34, 771 P2d 295, *rev den* 308 Or 184 (1989), the claimant appealed a partial denial. In its acceptance, the employer stated:

> "We hereby accept that you did suffer an accident while engaged in your work activities * * *. We will be responsible for any treatment related to the effects of this incident." *Id.* at 36.

The acceptance then continued to list conditions that the employer specifically did not accept. The court noted:

> "We agree with the Board that the letter is vague as to what Weyerhaeuser has accepted, if anything. It expressly 'accepts' all conditions 'related to' the accident, but does not specify what those conditions are; it would appear to leave Weyerhaeuser the option later to deny other conditions not specifically accepted on the ground that they are not related to the accident." *Id.* at 37.

Because the claimant did not challenge that aspect of the acceptance, however, the court did not analyze the consequences of it. Nevertheless, our comments illustrate the point that, in practice, accepting a work-related "cause" of symptoms is indistinguishable from accepting symptoms.

The case before us aptly illustrates that point. On her claim form, claimant described her injury as "headache dizzy." She described the accident as "headache—vomiting—dizziness." The employer accepted the claim, stating that "[p]rolonged exposure to fumes from roofing—caused dizziness and headaches." As a matter of law, "prolonged exposure to fumes" appended to the symptoms does not alter the fact that the employer was accepting the symptoms. "Prolonged exposure to fumes" is not a condition that manifests itself with certain symptoms; it is a cause of the symptoms and their underlying conditions. Because the fumes encountered were at the workplace, the employer essentially asserted that it had accepted the symptoms to the extent that the underlying conditions causing those symptoms were related to work. Thus, employer's "qualification" did nothing more than make explicit that which is implicit in every accepted workers' compensation claim: that claimant qualifies for workers' compensation because employer accepts that she was injured at work.

The stated "qualification," then, does not alter the fact that the employer was accepting claimant's symptoms. Otherwise, claimant would have no idea what conditions employer had accepted; with every condition, the employer could dispute whether it was caused by work. Thus, the case before us is materially identical to the case in *Piwowar*. If

*Piwowar* is to mean anything, the court must hold, as a matter of law, that employer accepted all the conditions that caused the symptoms listed by claimant.[1]

I would affirm the Board's conclusion that employer's "qualification" did not alter its acceptance of claimant's symptoms. The Board concluded, correctly, that employer's subsequent denial of claimant's vestibular disorders was only permissible if employer could satisfy the requirements of ORS 656.262(6)(a), which, at the time of the Board's decision, required the employer to establish by clear and convincing evidence that the vestibular disorders were not compensable. The Board held that employer had failed to do that. Since the Board's decision, however, the legislature has amended ORS 656.262(6)(a) to reduce the employer's burden of persuasion on a backup denial to a preponderance of the evidence. Or Laws 1995, ch 332, § 28. That change is applicable to this case. Or Laws 1995, ch 332, § 66; *Volk v. America West Airlines*, 135 Or App 565, 899 P2d 746 (1995), *rev den* 322 Or 645 (1996). Therefore, the burden imposed on employer by the Board was too stringent and the matter must be remanded for reconsideration under the new standard.

I concur with the majority's conclusion that it would serve no purpose to remand the denial of the other conditions on which employer prevailed under the clear and convincing evidence standard. Substantial evidence supports those conclusions. I also concur with the majority's decision to affirm the Board's denial of the compensability of claimant's

---

[1] In other words, the qualification simply described the conditions at work that employer believed led to the symptoms. That is no different from accepting a claim for symptoms to the extent that the symptoms are work related, which is what *Piwowar* said is ineffective to preserve the issue whether the acceptance covered a particular condition that caused the symptoms, on the ground that the *condition* is not work related. Were it otherwise, the principle established in *Piwowar* could be evaded by coupling every acceptance of a claim described by symptoms with a statement that the employer does not accept any condition causing the symptoms that is not work related. That would leave claimants in the very position where, according to *Piwowar*, the workers' compensation law did not intend them to be. In the absence of reasons to believe that the principle established in *Piwowar* has been affected by later amendments to the workers' compensation law, and I am aware of none, I believe that *Piwowar* requires us to conclude that the denial at issue in our case is a backup denial.

encephalopathy and dysthymia, because substantial evidence supports the Board's finding that claimant failed to show that toxins in the workplace caused those conditions.

Therefore, I respectfully concur in part and dissent in part.